GONZALES, Judge.
On September 21,1990, plaintiff, Mr. Danny Paul Thompson (Mr. Thompson) was driving home from work on Louisiana Highway 628. This highway is located on a federal enclave, the Bonnet Carré Spillway, and is entirely surrounded by federal land. Plaintiff Michael Holland (Mr. Holland) was his guest passenger. According to the facts found by the trial court, when Mr. Thompson attempted to pass a vehicle driven by Mr. Robert Morse, Mr. Thompson’s vehicle struck an overhanging limb,[2] startling Mr. Thompson, and causing him to hit the Morse vehicle. Both vehicles ran off the road and Mr. Thompson’s vehicle struck several trees. Both vehicles then returned to the road and collided a second time. Mr. Thompson was severely injured and Mr. Holland was injured also.
After trial on the merits, the trial court, by judgment dated June 27, 1994, rendered judgment in favor of Mr. Thompson and against the State in the amount of $2,494,-061.52, and in favor of Mrs. Thompson and against the State in the amount of $31,500.
The trial court, in another judgment also dated June 27, 1994, ruled against the State and in favor of Mr. Holland in the amount of $601,379.72. According to its reasons for judgment, the trial court based its finding of liability upon La.C.C. art. 2317 and La.R.S. 9:2800.
The State is appealing both judgments, and makes the following assignments of error:
1. The trial judge ignored jurisprudence and set bad precedent in finding that the State of Louisiana through the Department of Transportation and Development (DOTD) had “garde” over the trees which were involved in this accident.
2. The trial judge erred as a matter of law by ignoring a specific statute and committed manifest error, ignored established jurisprudence, and set bad precedent in finding that the State of Louisiana obtained a sixty foot (60') right-of-way with respect to Louisiana Highway 628.
3. The trial judge erred as a matter of law in allowing into evidence, and basing his decision upon, evidence that was not authenticated and was irrelevant.
|34. The trial judge committed manifest error in finding that the plaintiffs had proven by a preponderance of the evidence the existence of an overhanging limb and that said limb was a cause in fact of the accident.
5. The trial judge committed manifest error in unreasonably assessing the credibility and reliability of important witnesses.
6. The trial judge erred as a matter of law, ignored established jurisprudence, and set bad precedent in finding that the State of Louisiana through DOTD had actual or constructive notice of a vice or defect and reasonable opportunity to correct it within the meaning of La.R.S. 9:2800.
7. The trial judge erred as a matter of law, ignored established jurisprudence, and set bad precedent in holding that the State of Louisiana through DOTD had a duty im *12 posed upon it by the adoption of “clear zone” standards by Aashto in 1977.
8. The trial judge ignored established jurisprudence and set bad precedent in ignoring the duty imposed upon the driver of an overtaking or passing vehicle to ascertain before attempting to pass a preceding vehicle that from all circumstances of traffic and conditions of the roadway, the passing can be completed with safety, and failing to find the plaintiff, Mr. Thompson’s breach of this duty to be a complete bar to his recovery.
9. The trial judge ignored the jurisprudence and set bad precedent in failing to find that the breach of duty on the part of Mr. Thompson was the sole cause of the accident sued upon, thereby barring recovery by the plaintiff, Mr. Holland against the State of Louisiana through DOTD.
10. The trial judge ignored established jurisprudence and set bad precedent in failing to assess a greater degree of fault to the plaintiff, Mr. Thompson.
11. The trial judge committed manifest error with respect to his finding as to the nature and extent of the damages sustained by Mr. Thompson.
12. The trial judge committed manifest error with respect to his finding as to the nature and extent of the damages sustained by Mr. Holland.
Mr. and Mrs. Thompson answered the appeal, asking that the damage award be modified to increase the amount awarded for general damages, loss of consortium and life attendant care; asking that damages be awarded to their children for loss of consortium; and asking that the judgment be modified to decrease the amount of negligence assessed against Danny Paul Thompson from 10 percent to zero percent; and further, asking that appellant be condemned to pay the court costs in the trial court and in this appeal.
ANALYSIS
Critical to a finding of liability in this case is a determination of whether the defendant, DOTD, had custody or garde of the tree or tree limb which the trial court found pwas a cause of this accident. We reverse the trial court on its finding of strict liability under La.C.C. art. 2317 because of legal error.
LOUISIANA REVISED STATUTE 48:347
The first legal error committed by the trial court was its reliance upon La.R.S. 48:347.[3] The trial court interpreted La.R.S. 48:347 to mean DOTD had the authority to cut trees hanging over the traveled portion of the roadway.[4] A simple reading of section A *13 of that statute makes it clear that the statute has no applicability to trees, but is limited to the “installation of any structure, sign, obstacle, object, deposit, or thing within the limits of a highway_” La.R.S. 48:347(A). It is clear from the statute and the cases interpreting the first paragraph of La.R.S. 48:347 that this statute refers to constructed objects such as buildings, fences, and signs. See Giardina v. Marrero Furniture Company, Inc., 310 So.2d 607 (La.1975); Acme Poster Advertising Company v. State department of Highways, 352 So.2d 397 (La.App. 3d Cir.1977); Department of Highways v. Trichel, 343 So.2d 410 (La.App. 3d Cir.1977); Department of Highways v. Capone, 248 So.2d 62 (La.App. 1st Cir.), writ denied, 259 La. 682, 251 So.2d 380 (1971). It is further clear that these structures must be “within the limits of a highway,” which means within the highway right-of-way. Trichel, 343 So.2d at 413; Carpone, 248 So.2d at 63; see Giardina, 310 So.2d at 609; Acme Poster Advertising Company, 352 So.2d at 401. Thus, structures, signs, obstacles, objects, deposits, or other things within the limits of a highway that are installed by an act of man, as opposed to natural incursions on a right-of-way by tree development, are governed by La.R.S. 48:347. In cases involving natural incursions on a right-of-way by tree development, the law requires a court order to remove such incursions unless they constitute a hazard. See Adams v. State Department of Highways, 357 So.2d 1239 (La.App. 2d Cir.1978); Harkness v. Porter, 521 So.2d 832 (La.App. 2d Cir.1988). Nothing in La.R.S. 48:347 or the jurisprudence interpreting it indicates that natural incursions by tree development on a right-of-way are within the intendment of this statute.
RIGHT-OF-WAY UNDER 1923 CONTRACT
The trial court based its finding of liability under La.C.C. art. 2317 on the theory that the trees with overhanging limbs were growing within the right-of-way of DOTD and thus, DOTD was responsible for their condition. The trial court was in error in concluding on the basis of a 1923 contract that the highway right-of-way was sixty feet (60') in width.
In its reasons for judgment, the trial court found as follows:
Again referring to joint Exhibit 31 [sic] and transcript Page 33, in connection with that grant, the chief state engineer wrote to the U.S. District Engineer a letter concerning this agreement authorizing the State to construct a road from the toe of the levy [sic] to the edge of the Corps of Engineer’s [sic] property. A contract was then entered into between the State and the Pontchartrain Levy [sic] District Board and the Louisiana Highway Commission where it was agreed that Highway 628 was to extend thirty (SO') feet on each side of the centerline.
The above quoted statement actually makes reference to two exhibits, Exhibit 41 | eCAppendix A) and Exhibit 40 (Appendix B). [Editor’s Note: Not Reproducible.] Exhibit 41 (erroneously referred to as Exhibit 31 by the trial court) does contain a letter by the State’s chief of engineers dated July 10, 1933, wherein he requests permission from the United States government to construct a highway on both sides of the Bonnet Carré Spillway levees from the Mississippi River to what is now Highway 61. This letter does indicate that the highway is to be between the toe (bottom edge) of the levee and the U.S. government property line. It further references maps which indicate the center line of the highway and a profile of a typical cross section of the highway. One of those maps shows the cross section of a right-of-way thirty feet (30') in total width.
The next sentence in the above quoted trial court opinion refers to a contract between the State of Louisiana and the Pontchartrain Levee Board and the Louisiana Highway Commission (Exhibit 40). A close reading of this exhibit will show that it does not have anything to do with Highway 628. The contract on its face clearly indicates that it was entered into on August 16,1923, fully *14 ten years before permission was sought by the State of Louisiana to construct what is now Highway 628. The very documents upon which the plaintiffs rely to show authority to build this road clearly indicate that the road on which this accident occurred did not exist in 1923. The contract relied upon by the court and the plaintiffs’ expert was between basically the Louisiana Highway Commission, the Pontchartrain Levee District Board and Robinson Construction Company to do work on the old Baton Rouge/ New Orleans Highway — Route 1. The Baton Rouge/New Orleans Highway — Route 1 is the old River Road, or the old U.S. 61, that existed in the area of the Bonnet Carré Spillway before the construction of the spillway. This contract is of critical importance because it is the one upon which both the trial court and the expert relied to determine there was a sixty foot (60') right-of-way. The trial court cited a provision in the printed part of the 1923 contract which states that “the right of way extends thirty (30) feet on each side of the center line.” Exhibit 40 is the only document which alludes to a sixty foot (60') right-of-way. However, a contract by the State with a |7locaI contractor to do work on a different road, fully ten years before the construction of what is now Highway 628, is absolutely and totally irrelevant. Counsel for the State objected to this evidence. The United States government is not a party to the contract. The records in this case clearly indicate that the spillway was not completed until 1935. The United States, which is being asked to give a right-of-way in the 1933 letter, had no interest in the land in 1923 as can be determined from the record. Thus, in 1923, the United States could not have given permission for a servitude in this area.
In their request for production of documents, the plaintiffs asked DOTD to furnish all maintenance records on Highway 628 and for the Bonnet Carré Spillway area. There were several highways in the Bonnet Carré Spillway area over time, including old River Road, new U.S. 61 and new Interstate 10. The plaintiffs contend all of these documents are relevant because they are documents possessed by the State. The State possesses many documents concerning highway construction and maintenance. The mere possession of those documents does not make them relevant to this case. An objection as to relevancy was made and should have been sustained. The admission of these records caused critical damage to the defendant because they were the basis of an erroneous ruling.[5]
As our law indicates, there are several ways for the State to acquire ownership of land or to establish servitudes. Servitudes can be dedicated to the State by several methods, including formal dedication, implied dedication, statutory dedication and tacit dedication. A.N. Yiannopoulos, 2 Louisiana Civil Law Treatise, Property § 95, at 204-205 (1991). Further, to obtain ownership of land for the construction of highways, the State can acquire the land by purchase, exchange or donation, expropriation of the land, or by acquisitive prescription. A.N. Yiannopoulos, Common, Public and Private Things in Louisiana: Civilian Tradition and Modern Practice, 21 La.L.Rev. 697, 730-31 (1961).
I gThere is no evidence in the record showing an expropriation or the purchase of property connected with this matter, nor any attempt to claim ownership or a servitude by virtue of prescription. The plaintiffs rely on Exhibit 41 wherein the State of Louisiana requested permission to construct a highway with a thirty foot (30') right-of-way. That consent was given in 1933 by the United States government through the then-Acting Secretary of War, Douglas MacArthur. The United States, as owner of the land in 1933, is the only party who could grant a right-of-way for what was to become Highway 628. The record is clear that the road was constructed, does exist, and has been maintained by DOTD and used by the citizens of the United States.
There is also no evidence of any statutory dedication which would comply with La.R.S. *15 33:5051.[6] Therefore, the only issue for determination is whether there has been an | ¿implied dedication.
An implied dedication is one where there is consent of the owner to permit a servitude and acceptance by the person in whose favor the servitude is granted by use. Based on the information in this record, there has been an implied dedication of a thirty foot (30') right-of-way to the State of Louisiana for Highway 628. However, the plaintiffs’ expert, Mr. James Clary, in his testimony on at least six (6) occasions referred to Exhibit 40 as the basis of his opinion that the right-of-way was sixty feet (60'). As pointed- out above, Exhibit 40 is a contract for the wrong road, the wrong period of time, and between the wrong parties; and as also noted, it was totally irrelevant.
The expert, Mr. Clary, also relied on the ■ deposition of Mr. Roth, who gave the legal opinion that La.R.S. 48:491[7] grants some *16 sort of right-of-way or servitude on behalf hoof the State.[8] The defense objected to the expression of a legal opinion by this unqualified witness.
A simple reading of La.R.S. 48:491 indicates a right-of-way under this statute (tacit right-of-way) can be acquired only by parish governing authorities or municipal governing authorities. Not only was Mr. Clary’s opinion in this area totally wrong, but neither he nor Mr. Roth qualified as a legal expert to give an opinion as to the meaning of La.R.S. 48:491. His error in this regard is why the defense’s objection to this legal opinion testimony should have been sustained.
A third basis for Mr. Clary’s opinion as to the right-of-way was plaintiffs’ Exhibit 23. Based on this document, he opined the right-of-way may have been as wide as one hundred feet (100'). In attempting to lay the foundation for the admission of the document, the witness, Mr. Clary, was unable to authenticate the offering. The máp was handed to Mr. Clary in court by plaintiffs’ counsel and the trial court had no evidence that it was what it was purported to be. No one testified that it was a business record of anyone and no attempt was ever made to lay a foundation as to its authenticity or to its status as a business record. Objection to the authenticity of this exhibit was also made and should have been sustained.
In addition to not being authenticated, the document was rank hearsay and was the unsworn, out of court statement of the person who drafted the map. The purpose of the map was to show certain encroachments over the U.S. government property line on both sides of the levee in the entire Bonnet Carré Spillway area. In the top left-hand comer of the map, there is an insert showing not Highway 628, but Highway 608. On one portion of that insert is a line with the figure “100” between it. Mr. Clary used this document to claim a possible one hundred foot (100') right-of-way for the State of Louisiana. The problem with this testimony is that there *17 is no documentation to support this map. Whoever the draftsman of this map was, he could not have relied on any more information relative to the right-of-way of the State than that which was presented by the plaintiff in Exhibit 41, showing permission by the United States to construct a thirty foot (30') right-of-way. That “100” figure on the map does not have any identification of feet behind it, although everywhere else on the map where feet are indicated, the symbol for feet is affixed. The highway number, of course, is Highway 608 and no explanation is given as to why Highway 608 is indicated on the map rather than Highway 628.
| ^Perhaps the most glaring error relative to plaintiffs’ Exhibit 23 is that all the evidence in this record indicates there is not enough room between the toe of the levee and the U.S. government property line for the figures on this map to make any sense. If this were a one hundred foot (100') right-of-way, the remaining portion of the property between the toe of the levee and the U.S. government property line as shown by this map would have to be twice as large. There would have to be three hundred feet (300') from the toe of the levee to the U.S. government property line. No other map in the entire record indicates such a distance in the area in question.
Finally, even if the map were authentic and accurate, it is simply not the law that a draftsman drawing two lines on a sheet of paper can create a servitude of passage against the United States. The law on servi-tudes is that they are fixed as of the time consent is given for the servitude and cannot be made more burdensome by the person who has the right.
In an alternative attempt to increase the width of the right-of-way, the expert relied upon La.R.S. 48:220.1[9] which states a right-of-way “shall include the roadway, shoulder, roadside ditch and an area extending one and one half feet beyond the rear or outside slope of the roadside ditch.” Much time and effort was expended at the trial attempting to show a right-of-way under the provisions of this statute. However, a plain reading of the statute and the cases thereunder indicate that this right-of-way exists only where the department hghas constructed a highway “without a recorded conveyance or dedication ... by the landowner.” (Emphasis added.) Plaintiffs’ own evidence in Exhibit 41 shows there was a dedication by the landowner, the United States government, for the construction of Highway 628. Therefore, this is not a highway that was constructed without a dedication by the landowner, and La.R.S. 48:220.1 does not apply. Where there has been a dedication, the width of the right-of-way is determined by the dedication. Even if there had been no dedication, it is doubtful that DOTD could acquire a servitude under this provision against the United States, a separate sovereign. Basic federal constitutional principles dictate that this statute is not applicable to the property of the United States. See U.S. v. City of Detroit, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958); McCulloch v. The State of Maryland, 17 U.S. (4 Wheat) 316, 4 L.Ed. 579 (1819).
Lands devoted to a particular use by the federal government, and over which jurisdiction or ownership has been ceded to the United States, cannot be taken under the right of eminent domain of a state, unless *18 such use has been abandoned. Furthermore, a state can create no right to condemn federally owned lands.
29A C.J.S. Eminent Domain § 61 at 190 (1992) (footnotes omitted).
The rationale of McCulloch which describes the nature of the federal-state relationship, makes it absolutely clear that the State of Louisiana, which was given a thirty foot (30') servitude in 1933, cannot acquire a wider servitude such as a sixty foot (60') or one hundred foot (100') servitude without the express consent of the United States.
The use of La.R.S. 48:220.1 by the plaintiffs and their expert to establish a right-of-way is highly misplaced for other reasons. First of all, factually, the record does not disclose the existence of a roadside ditch, although of course, it does disclose a roadway and a shoulder. Under this statute, the servitude would extend one and one half feet (1½') beyond the rear slope of a roadside ditch. However, the photographs and the entire record show that on the land side of the road, as opposed to the levee side of the road, there is no ditch or drainage area— there is just a sloping shoulder that goes into a large swampy area.
114There is an additional reason why La.R.S. 48:220.1 does not apply. The statute was enacted in 1976. The highway must have been constructed after 1976 by DOTD and existed for an additional period of three years for the statute to apply. Two cases have refused to give retroactive effect to this statute. See State, Department of Transportation and Development v. Richardson, 453 So.2d 572, 576 n. 3 (La.App. 1st Cir.1984); and State, Department of Highways v. Traina, 347 So.2d 55, 57 (La.App.2d Cir.1977). Since the record in this case reflects that the road in question was constructed in 1933, this fact alone makes La.R.S. 48:220.1 inapplicable to this particular highway.
Sinee all of the theories of the expert upon which the trial court based a finding of custody or garde are in error, the finding of liability based on La. C.C. art. 2317 is erroneous.
CLEAR ZONE
The court also found liability based on a violation of some clear zone concept as advanced by the plaintiffs.[10] Apparently, the clear zone finding in this case rested heavily upon the erroneous determination that the right-of-way of Highway 628 was sixty feet (60').
The record, photographs and video tape in this case indicate that Highway 628 is a rural highway running along the side of the Bonnet Carré Spillway levee from the Mississippi River to U.S. Highway 61. There are no buildings or structures encroaching upon this highway. Two railroad tracks traverse it. At the site of these railroad tracks the road is elevated. To the right (or east side when heading north) of the highway is a large open area that begins with the slope of the levee. To the left of the highway, there is a fairly wide shoulder which is cleared more than ten feet (10') beyond the edge of the pavement and which is more than five feet (5') beyond DOTD’s right-of-way. The photographs of the site of the accident indicate that the highway is absolutely straight, and hsthus there is nothing in the highway’s configuration which would cause a motorist to exit the highway on the side by the swamp and trees.
The trial court found that the State was negligent for violating the so-called “clear zone” standards. This finding was legally erroneous for several reasons.
The trial court apparently based its conclusion about the applicability of clear zones upon certain testimony by Mr. Clary.[11] In *19 addition to being extremely confusing, this | ^testimony nowhere establishes that the clear zone standards, which apparently are part of the AASHTO guidelines adopted in 1989, require DOTD as of that date to go back and reconstruct every road to provide for those clear zones. A fair reading of the clear zone concept is that DOTD is to identify danger areas on existing highways and, when funds become available, to make improvements that will provide for “clear zones.” The testimony of Mr. Clary set out in footnote 11 does not establish that, when this road was overlaid in 1964, DOTD was required to obtain additional rights-of-way and reconstruct this road with eighteen feet (18') of additional shoulders on each side. The record does not reveal that a reconstruction of this highway occurred at all. The work done in 1964 was a simple overlay of an existing highway. There could not be a reconstruction of this road to that extent be *20 cause DOTD did not own this roadway, but only had a thirty foot (80') servitude. Also, DOTD had no way of acquiring an additional right-of-way without the consent of the United States Congress.
Mr. Clary’s testimony does indicate that if there is a reconstruction of a highway, DOTD is supposed to follow “current” standards. Apparently, by “current” standards he means those existing at the time of his testimony. Even assuming that the work in 1964 was a reconstruction, there is nothing in Mr. Clary’s testimony to indicate that these standards were in existence in 1964. In describing the clear zone concept, Mr. Clary |]7Ppints out that these ideas were developed in the “sixties through today.” He does not identify exactly when they were developed. Given the fact that the plaintiffs totally failed to establish the existence of these standards at the time of the 1964 road work, that alone would normally be sufficient to justify a reversal of a finding of fault based on the applicability of those standards. But in addition, in the case of Beecher v. Keel, 645 So.2d at 670, the court noted that the clear zone standards were not in effect in 1968. Since there is no showing in the record that clear zone standards were in effect in 1964 and the jurisprudence indicates they were not in effect until after 1968, obviously these standards could not be applicable to a resurfacing of Highway 628 in 1964.
There is nothing in the law relative to clear zones which requires DOTD to cut down trees or obstacles on property which it does not own. DOTD could not cut the trees on land belonging to the United States, and they could not expropriate or buy this property without the consent of the United States.
NOTICE TO THE STATE— LA.R.S. 9:2800[12]
The trial court based its judgment in part upon La.R.S. 9:2800.[13] The trial court | igfound the accident was caused in part by some broken limbs that had temporarily dropped into the plaintiffs’ path of travel. It is obvious from the record and plaintiffs’ own contentions that this was a temporary condition. A temporary condition existing in the travelled portion of the roadway does not *21 constitute a defect in the roadway as contemplated by La. C.C. art. 2317. A “defect” is some flaw or fault existing or inherent in the thing itself. Nicholes v. St. Helena Parish Police Jury, 604 So.2d 1023, 1027 (La.App. 1st Cir.), writ denied, 605 So.2d 1378 (La.1992); Kyle v. City of Bogalusa, 506 So.2d 719, 726 (La.App. 1st Cir.1987); Naylor v. La. Department of Public Highways, 423 So.2d 674, 681-82 (La.App. 1st Cir.1982), writs denied, 429 So.2d 127, 134 (La.1983).
When trees are outside the right-of-way, they are outside the ownership or “garde” of the entity charged with maintaining the highway. Accordingly, La. C.C. art. 2317 is inapplicable and simple negligence principles apply. To establish a breach of DOTD’s duty to maintain safety for the motoring public, a plaintiff must show that a hazardous condition existed and that DOTD had actual or constructive knowledge of said condition, but failed to take corrective action within a reasonable time. Briggs v. Hartford Ins. Co., 532 So.2d 1154 (La.1988).
The record merely shows that Highway 628 had a partial overhang of living trees on one side. (See Appendix C). To impose liability on DOTD, therefore, the trial court must have determined that a partial overhang of living trees is a hazardous condition. This |!interpretation would require the entities responsible for highway maintenance to decimate the trees alongside many of the most beautiful rural roadways in the state. The jurisprudence has never classified a partial overhang of living trees as a hazardous condition.
Assuming the overhanging limb constituted a hazard or defect, DOTD would have to have notice of such a hazard or defect before it could be negligent for failing to remove such an overhanging limb. In the instant ease, of all of the people who traveled Highway 628 the day of the accident, before and after it occurred, only one of them saw the offending tree limb. Thus, there is absolutely no evidence in the record to indicate that DOTD was in any way given notice of the limb which Thompson struck. Therefore, we find that the trial court erred in making a finding of liability against DOTD based on La. R.S. 9:2800 or simple negligence.[14]
DECREE
Therefore, for the foregoing reasons, the trial court judgments are REVERSED. The plaintiffs shall bear all court costs of the trial and appeal.
liAPPENDIX A
DEPARTMENT OF THE ARMY
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267
September 3, 1992
REPLY TO ATTENTION OF:
Real Estate Division
FILED IN EVIDENCE
Date: 9-17-92
DONNA BLADES
DEPUTY CLERK OF COURT
Mr. J. Thomas Anderson
Attorney at Law
P.O. Drawer 1937
Hammond, LA 70404
Dear Mr. Anderson:
This is in reference to the copies of maps given to you by this office relating to State Highway 628 located along the outside edge of the Bonnet Carré Spillway, St. Charles Parish, Louisiana.
The maps are true copies of the maps that we maintain as a part of our normal record keeping process.
Sincerely,
Thad J. Brown
Chief, Real Estate Division
*22 JaAct Feb. 15, 1933.
[Public—No. 351—72d CongRess]
[H.R. 13523]
AN ACT
In reference to land in the Bonnet Carré Floodway Area.
Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the proviso in section 4 of the Act for the control of floods on the Mississippi River and its tributaries approved May 15,1928, “That any land acquired under the provisions of this section shall be turned over without cost to the ownership of States or local interests,” shall not apply to the lands heretofore acquired or that may be hereafter ácquired in connection with the construction, maintenance, or operation of the Bonnet Carré Spillway and Floodway. The Secretary of War is hereby authorized to grant to any citizen, association, railroad, or other corporation, State or public agency thereof, rights of way, easements, and permits, over, across, in, and upon said lands for railway, highway, telephone, telegraph, and pipe-line crossings, and other purposes. The grants issued in pursuance of this authority shall be under such terms and conditions as the Secretary of War may deem advisable for the protection of the public interests, and may be perpetual or temporary in his discretion.
Approved, February 15,1933.

JsINSTRUMENT.

The State of Louisiana is hereby granted, pursuant to the provisions of an Act of Congress approved February 15, 1933. (Public No. 351—72d Congress), the right, power, and privilege to construct and maintain highways on lands of the United States ?? the landside toes of the Bonnet Carré Spillway Side Levees as shown on the plans attached hereto, subject to the following conditions:
1. That the construction and maintenance of said highways shall be subject to the supervision and approval of the District Engineer, Engineer Department at Large, in charge of the locality.
2. That this instrument does not authorize the use or occupation of railroad right of ways which have not been acquired by the United States.
WITNESS my hand this 4th day of August, 1933.
/s/ Douglas MacArthur
[[Image here]]
Acting Douglas MacArthur
Acting Secretary of War.
UStatb of Louisiana
office
BOARD OF STATE ENGINEERS
207 NEW ORLEANS COURT BUILDING
New Orleans, La.
July 10th, 1933.
Lt. Col. J.N. Hodges,
U.S. District Engineer,
Second New Orleans Engineer District,
Foot of Pryterie St.,
New Orleans, La.
My dear Colonel:—
It is contemplated to use the C.C.C. troops now stationed at La Flece, La., for the construction of highways on both sides of the Bonnet Carré Spillway levees from the Mississippi River to the New Orleans-Hammond Highway.
These highways will have a 24 ft. crown and will be built approximately 3 feet above the natural ground surface.
It is understood that there is suitable space for the construction of these roads between the land toe of the levees and the edge of the right-of-way acquired by the United States for the construction of these levees thruout the dry land section, and permission is hereby requested to construct these roads in this area. Permission is also requested to utilize the top of the wide hydraulic fill in the swamp section for the same purpose.
Maps in quadruplicate showing the location of the center line of the highway, together *23 with profile of typical cross sections, are sent herewith.
Yours very truly,
/s/ Signature
Harry Jacobs,
Chief State Engineer.
APPENDIX C
[[Image here]]
[[Image here]]
Before GONZALES, PARRO and GUIDRY[1], JJ.

. Whether the plaintiff struck any overhanging limbs is seriously contested by the defendant, but is a finding of fact not reviewed in this opinion.

. La.R.S. 48:347 provides:
A. The department may apply to the court for any process necessary to prevent the installation of any structure, sign, obstacle, object, deposit, or thing within the limits of a highway contrary to this Chapter or any lawful regulation issued hereunder.
B. Whenever any advertising sign located within fifty feet of the outer edge of the right of way constitutes a dangerous hazard to the traveling public, the department may, after due notice to the owner thereof to remove it, apply to the district court of the parish in which the sign is located for the process necessary to effect the removal of the sign.
C. Whenever any of the things described in Subsection A of this Section are found to exist within the limits of a highway, the department may summarily remove and dispose of it at the expense of the person responsible therefor. If it retains apparent value, the owner shall be notified, orally or in writing, to remove it within five days or such other period as may be agreed upon. If the owner be unknown or cannot be found, a written notice shall be affixed to the object setting forth that it must be removed within a period not less than five days from the date specified. Failure to remove within the specified period operates as a forfeiture of all rights thereto and the department may remove the object for its own use, or dispose of it at private or public sale, or destroy it, or dispose of it in any manner. The owner and any other person responsible therefor remains liable for any damage to public property or expenditure of highways [sic] funds resulting from the installation or removal of such things.
D.Notwithstanding any other provision of law to the contrary, political campaign signs shall not be erected, displayed, or posted within any highway right of way or litter free zone, subject to the provisions and penalties of R.S. 25:1111(E) and R.S. 25:1118, and the collection and distribution of fines as provided in R.S. 25:1112.

. In its Reasons for Judgment, the trial judge stated that [i]n accordance with R.S. 48:347, the State has the power and authority and obligation to remove obstacles or hazards from its highways.” There is another similar quote in the *13 Reasons for Judgment, referring to the State's authority and obligation under La.R.S. 48:347. A reading of the Reasons for Judgment in their entirely reveals that the trial judge deemed tree limbs as "obstacles" within the meaning of La. R.S. 48:347.

. To show how important this evidence was, it is necessary to examine the testimony of the plaintiffs' expert, Mr. James Clary. Additionally, it was apparently not until the morning of trial that Mr. Clary advised the court and all counsel of the need to place Exhibit 40 into evidence.

. La.R.S. 33:5051 provides:
A. Whenever the owner of any real estate desires to lay off the same into squares or lots with streets or alleys between the squares or lots and with the intention of selling or offering for sale any of the squares or lots, he shall, before selling any square or lot or any portion of same:
(1) Cause the real estate to be surveyed and platted or subdivided by a licensed land surveyor into lots or blocks, or both, each designated by number.
(2) Set stakes, which shall be permanent in nature, at all of the comers of every lot and block thereof, properly marked so as to designate the correct number of each lot and block.
(3) Write the legal description of the land on the plat or map, and cause to be made and filed in the office of the keeper of notarial records of the parish wherein the property is situated and copied into the conveyance record book of such parish, and a duplicate thereof filed with the assessor of the parish, a correct map of the real estate so divided.
B. The map referenced in Subsection A of this Section shall contain the following:
(1) The section, township, and range in which such real estate or subdivision thereof lies according to government survey.
(2) The number of squares by numerals from one up, and the dimensions of each square in feet and inches.
(3) The number of each lot or subdivision of a square and its dimensions in feet and inches.
(4) The name of each street and alley and its length and width in feet and inches.
(5) The name or number of each square or plat dedicated to public use.
(6) A certificate of the parish surveyor or any other licensed land surveyor of this state approving said map and stating that the same is in accordance with the provisions of this Section and with the laws and ordinances of the parish in which the property is situated.
(7) A formal dedication made by the owner or owners of the property or their duly authorized agent of all the streets, alleys, and public squares or plats shown on the map to public use.
C. Formal dedication of property as a road, street, alley, or cul-de-sac shall impose no responsibility on the political subdivision in which the property is located until:
(1) The dedication is formally and specifically accepted by the political subdivision through a written certification that the road, street, alley, or cul-de-sac is in compliance with all standards applicable to construction set forth in ordinances, regulations, and policies of the political subdivision, which certification may be made directly on the map which contains the dedication; or
(2) The road, street, alley, or cul-de-sac is maintained by the political subdivision.

. Louisiana Revised Statute 48:491 provides:
A. All roads or streets in this state that are opened, laid out, or appointed by virtue of any act of the legislature or by virtue of an order of any parish governing authority in any parish, or any municipal governing authority in any munic-ipalily shall be public roads or streets, as the case may be.
B. (l)(a) All roads and streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority within its parish, or by the authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property.
(b) Actual or constructive knowledge is presumed if prior to or during the work the public body notifies the last known adjoining landowners of same by written notice by certified or registered mail, return receipt requested. When such notice is given more than two years and ten months from commencement of such work, it shall suspend the foregoing prescription for sixty days.
(c) Actual or constructive knowledge is conclusively presumed within all parishes and municipalities, except as otherwise provided by R.S. 48:491(B)(3), if the total period of such maintenance is four years or more, unless prior thereto and within sixty days of such actual or constructive knowledge, the prescription is interrupted or suspended in any manner provided by law.
(2) When a local governing authority for any reason decides to dispose of any road, street, or property used for right-of-way purposes which was originally donated to the authority or its ancestor in tide, the property shall revert to the *16 original donor or his heirs or assigns. The authority shall notify the donor or his heirs of its intention to donate the property by sending written notice via certified mail, return receipt requested, to the donor or his heirs at his last known address. The notice shall inform the donor or his heirs or his assigns of the authority’s intention to have the land revert and provide him ninety days from receipt in which to respond. If, upon the expiration of the ninety-day period, no response has been received by the authority, it shall dispose of the property in accordance with applicable law. In the donation deed from the authority to the donor or his heirs or his assigns, the authority shall reserve rights of passage for landowners who own property contiguous to the property to be reverted.
(3) In the parish of Vermilion only such maintenance operations are conducted by authority of a parish or municipal governing authority pursuant to a written contract with the landowner which specifies that a private road or street shall not be or become a public road or street.[1]
C. All roads or streets made on the front of their respective tracts of lands by individuals when the lands have their front on any of the rivers or bayous within this state shall be public roads when located outside of municipalities and shall be public streets when located inside of municipalities.
1. In par. B(3), the language is as it appears in the enrolled bill (Acts 1988, No. 869, § 1).

. The deposition of Mr. Roth is not in the record, however his testimony is. In his testimony, Mr. Roth discussed servitudes and rights-of-way under La.R.S. 48:491. He also discussed La.R.S. 48:220.1, but opined that statute was not applicable because, "we don't have a roadside ditch here-” Mr. Roth also made a distinction between roadways where there was a dedicated right-of-way, and those where there was no dedicated right-of-way. When he said, "[w]ell my answer was, and to clarify the difference between a roadway where we had a dedicated right of way and where we do not. If we have a dedicated right of way, we maintain in one fashion or the other, the entire dedicated right of way. Now, that's not to say that we mow the entire dedicated right of way. In some cases we don’t. We, we typically mow fifteen feet. Now, when we do not have a dedicated right of way, but have a roadside ditch, then, we'll maintain to the back side of the roadside ditch. Where we have neither, then, we’ll maintain what's practical to maintain. In this case it's, because of the steep embankment, 7 feet is a reasonable — .” We cannot tell what Mr. Clary was referring to when he said, "I agree with Mr. Roth in his deposition, that in the absence of a right of way, if a highway has been operated for three years by the State of Louisiana they have a right of servitude that includes the traveled way, the shoulders, the ditches, to a point 18 inches on the far side of the ditch. And that would make it well in excess of 100 feet in that way.” We cannot be sure what Mr. Clary meant by this statement. It seems that Mr. Clary confused maintenance under La.R.S. 48:491 with servitudes acquired under La.R.S. 48:2201.

. Louisiana Revised Statute 48:220.1 provides:
Whenever the Department of Highways, under its statutory authority takes over an existing road from a parish or municipality, unless there is an agreement between the two agencies to the contraiy, the department shall acquire all of the rights which the ceding agency possessed with regard to the ceded road or street. In those instances where the highway was constructed by the parish or municipality without a recorded conveyance or dedication of the right of way by the landowner, and in those instances where the department has constructed a highway without a recorded convey-anee or dedication by the landowner, the width of the right of way servitude for the said highway shall include the roadway, shoulder, roadside ditch and an area extending one and one-half feet beyond the rear or outside slope of the roadside ditch. Nothing herein shall affect title to any buildings or fences, nor require their removal without payment of just compensation therefor, nor shall anything herein affect tide to the soil beneath the highway right of way nor to any minerals thereunder. The existence of the highway for a period in excess of three years shall vest title to the right of way servitude in the Department of Highways.

. For a discussion of the clear zone concept, see Beecher v. Keel, 94-0314 (La.App. 4th Cir. 9/29/94), 645 So.2d 666, 670-671, writ denied, 95-0108 (La. 3/10/95), 650 So.2d 1185.

. On direct examination, the plaintiff's expert witness, Mr. Clary, testified in part as follows:
Q. Well, would this be an opportunity for the state to come in and say we have a reconstruction project not over the entire roadway, but in a certain part of it and look and see any standards that weren’t in effect at that time and make them or any defects that weren't meeting current standards and make those defects to meet current standards at that opportunity, the reconstruction project?
A. MR. KEMP: Judge, I object to the form of the question, because it asks for an opportu *19 nity, as oppose [sic] to a requirement and what we are concerned with here is a requirement or a duty placed upon the D.O.T.D. to upgrade the road under certain circumstances, not simply the opportunity to do so.
THE COURT: I didn’t understand the question any way. Would you rephrase the question?
BY MR. ANDERSON:
Q. All right. Would you have thought that at the time that they entered into these reconstruction projects on Highway 628 that the highway department would have had a duty to implement any design standards or safety standards that were in effect at that time?
A. My understanding is if there is a reconstruction they are suppose to follow the current standards, yes.
Q. And Mr. Claiy, would you tell the Court about the concept of clear zones?
A. The concept of clear zones is a concept that began in the '50s, and publications regarding the clear zone concept are included in the Highway Safety Design and Operating Practices Manuals beginning in the '60s through today and the object of the clear zone concept is to provide an unencumbered roadside area of such dimensions and such slopes that a vehicle leaving the road for whatever reason will be able to regain the traveled way, and according to the highway safety standards, that if this is provided, 80 percent of the cars that leave the road will regain the traveled way.
Q. And are those clear zones published in any publication?
A. Yes, they are published in the, what is currently called the Roadside Design Guide which was formally [sic] the Handbook of Highway Safety Design and Operating Practicing published by the United States Department of Transportation and the Federal Highway Administration.
Q. And is that something that is adopted by the Louisiana Department of Transportation and Development.
A. Yes, sir.
Q. And the current standards of the Roadside Design Guide includes [sic] a clear zone is also something that is adopted by the Department of Transportation and Development.
A. Yes, sir.
Q. And, Mr. Clary, on clear zone is a desired width — is a desired width of the highway or traffic volume or roadside geometry come [sic] into play or effect in connection with clear zones?
A. Say it again.
Q. The roadside geometry and traffic volume, are those entered into a formula of determining clear zones for certain areas?
A. The parameters for clear zone are whether you are in a cut or fill section, the classification of a highway by average daily traffic, the highway design speed and with all of these you can enter a chart and it will tell you what your clear zone is suppose to be. You are suppose to be in an area of a recoverable slope.
Q. Do you have in your possession any evidence or any information that would lead you to believe what the clear zone that was in effect for the area where this accident occurred?
MR. KEMP: Judge, I would ask that a foundation be laid to show that the publication or documents or whatever that he is going to refer to were adopted prior to the construction of this road, the same as before and that has not yet been done. I think he has identified them by name but hasn’t gone into when they were published.
BY MR. ANDERSON:
Q. Mr. Clary, is a clear zone something that— the clear zone concept that is published by AASHTO is that something that the highway department has a duty to follow or is that something that they have the discretion to follow and if so, would you explain the answer?
MR. KEMP: I would object to that, Your Honor, because that calls for a legal conclusion.
THE COURT: The objection is overruled. BY THE WITNESS:
A. The clear zone concept is a safety concept that the highway department is suppose to take their accidents statistics and formulate a plan to eliminate spots that are hazardous. They are to, in their yearly analysis of all of their roads when they prepare their highway needs summary, that every mile of road is suppose to be categorized and if they have problem areas then they are suppose to try through a safety program and there is what they call a Highway Spot Program that you can actually reconstruct an area of road or remove hazards with federal money without having to reconstruct a whole area of highway. It is for the promotion of safety and it does not necessarily have to be done in connection with minimum design standards.

. La.R.S. 9:2800 states as follows:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
D. A violation of the rules and regulations promulgated by a public entity is not negligence per se.
E. "Public entity” means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instru-mentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instru-mentalities, officers, officials, and employees of such political subdivisions. Public entity also includes housing authorities, as defined in R.S. 40:382(1), and their commissioners and other officers and employees.

. We note that this court found La.R.S. 9:2800 unconstitutional in Rhodes v. State, Department of Transportation and Development, 94-1758 (La.App. 1st Cir. 5/5/95), 656 So.2d 650, writs granted, 95-1848 (La. 1/3/96), 665 So.2d 1173. However, this finding of unconstitutionality does not affect the La.R.S. 9:2800 issue in the present case because the Rhodes decision was rendered after the trial court's judgment in this case. Moreover, since Rhodes, there has been constitutional, legislative and judicial activity in this area. Louisiana Constitution article XII, § 10(C) has been amended by the legislature and vote of the people relative to sovereign immunity. In connection with that constitutional amendment, there was implementing legislation that has been interpreted by other circuits. See Ayers v. Brazell, 27,756 (La.App. 2d Cir. 12/6/95), 665 So.2d 694; Begnaud v. State, Department of Transportation and Development, 95-714 (La.App. 5th Cir. 2/14/96), 679 So.2d 113. Thus, the question of damages and whether there is any type of limited sovereign immunity available to the State, will have to be evaluated when and if this court ever reaches that question. However, in light of constitutional, legislative and judicial activity in this area since the time of the trial court’s opinion in this case and the First Circuit’s opinion in Rhodes, serious questions of retroactivity have come before the courts and the legislature may well impact on that determination.

. Finally, because we reverse the trial court’s finding of liability against the State, it is not necessary to address plaintiffs’ assignments of error regarding the amount of damages awarded by the trial court.