1 .GUIDRY, J.
Arlen B. Cenac, Jr. (Cenac), Public Access Water Rights Association, et al. (PAWRA) and Melva Cressionie each separately appeal from the trial court’s judgment. Appellant, Cenac, appeals that portion of the trial court’s judgment declaring the canal in question to be burdened by a servitude of use in favor of the public at large by virtue of implied dedication as recognized by Louisiana law. Appellant, PAWRA and appellant, Melva Cressionie, appeal the portion of the trial court’s judgment granting a permanent injunction barring them from launching, parking or otherwise using the boat launch. For the reasons that follow, we affirm in part and reverse in part.
FACTS AND PROCEDURAL HISTORY
The property at issue in the present case consists of a canal, boat launch, and parking area located on what is known as Golden Ranch Plantation. Cenac purchased the canal, known as Company Canal, and the land on which the boat launch and parking area are located, as well as many additional acres, from the Gheens Foundation on April 4, 2000. Prior to and following this date, the public used the canal and boat launch at issue to access Lake Salvador for commercial and recreational purposes. However, on October 10, 11 and 17, 2000, Cenac attempted to erect a security fence enclosing the boat launch and preventing its use by members of the public. Additionally, Cenac submitted an application to the Army Corps of Engineers on May 23, 2000, seeking a permit to install and maintain a gated structure across the Company Canal.
Members of the Gheens community, designated as PAWRA herein, prevented Ce-nac from completing the above-mentioned fence. Therefore, on October 19, 2000, Cenac filed a petition for injunction and damages against named members of PAW-RA for their continued trespass and interference with Cenac’s use of his property. Thereafter, on November 22, 2000, Melva Cressionie, also a | ¿resident of the Gheens community and living across the highway from the boat launch and canal, filed a petition for possession and for injunctive relief against Cenac. Melva Cressionie *562 claimed possession of a real right in the form of a servitude of right of way and use to cross Cenac’s property and use the boat launch.
Thereafter, on November 29, 2000, Ce-nac filed a motion and order to consolidate the above cases. Also on November 29, 2000, PAWRA filed an answer and recon-ventional demand to Cenac’s petition whereupon it asserted that its members have possession of a real right in the form of a servitude of right of way and use to use the boat launch and to launch'into the canal. PAWRA additionally asserted that the acts of Cenac in attempting to erect the fence constituted a disturbance in fact and in law.
. On January 2, 2001, Cenac filed a first supplemental and amending petition wherein he sought a declaratory judgment that he owns and is in possession of the property at issue and that the members of PAWRA and Melva Cressionie do not own a real right to the property. On January 17, 2001, Melva Cressionie filed an answer and reconventional demand to Cenac’s first supplemental and amending petition whereupon she asserted that Cenac’s ancestors in title expressed plain and positive intent to give the public a servitude to use the launch and canal and sought a judgment declaring that the public has acquired a servitude of use of the boat launch, parking area and canal. Further, in an answer and reconventional demand filed February 16, 2001, Melva Cressionie added that alternatively, the canal is a public canal, has been formally dedicated, or is private but subject to the public use.
PAWRA, on January 30, 2001, also filed an answer and reconventional demand to Cenac’s first supplemental and amending petition seeking judgment declaring the public has acquired a servitude of use to the boat launch, parking area, and canal.
IbA bench trial was held on March 8, 2001. In a judgment rendered in open court on March 15, 2001, and signed on April 17, 2001, the trial court rendered judgment as follows: in favor of Cenac and issued a permanent injunction barring members of PAWRA and Melva Cression-ie from launching, parking or otherwise using the launch; in favor of Cenac declaring him to be the owner of the property in dispute; and in favor of the members of PAWRA and Melva Cressionie declaring Company Canal is burdened by a servitude of use in favor of the public at large by virtue of implied dedication as recognized under Louisiana law.
ASSIGNMENTS OF ERROR
Cenac now appeals the judgement of the trial court and asserts the following assignment of errors:
1. The trial court erred in holding that La. R.S. 9:1251 does not apply to Company Canal.
2. The trial court erred in holding that Company Canal is burdened by a servitude of implied dedication of public use.
3. The trial court erred in excluding Cenac’s Exhibits 18-20 and 24-27, which were introduced as Cenac Proffer No. 1.
Additionally, the members of PAWRA and Melva Cressionie now appeal the judgment of the trial court and assert the following assignments of error:
1. The trial court erred in holding that the public boat launch is not subject to an implied dedication creating a servitude of public use.
2. The trial court erred in holding that, in spite of the long history of public use of the boat launch and permission by the prior owners for public use of the boat launch, there was nonetheless no servitude of public use over the boat launch.
*563 3. The trial court erred in construing LSA 9:1251(A), prohibiting a servitude of passage over land used to access waters for boating, to prevent the establishment of a servitude of public use, and in failing to apply LSA 9:1251(B) to allow such a servitude.
4. The trial court erred in failing to find that the boat launch was dedicated to public use as an extension of the servitude of public use on the Company Canal.
|fi5. The trial court erred in refusing to issue an injunction prohibiting Cenac from blocking use of the Company Canal on the grounds that there was insufficient evidence of Cenac’s attempt to block such use.
DISCUSSION

Standard of Review

Whether property has been dedicated for public use is a question of fact. Winningham v. Hill, 164 So.2d 384, 385 (La.App. 2nd Cir.1964). A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Based on the law as outlined herein, and for the reasons that follow, we find that the trial court was clearly wrong in finding that the canal in question had been dedicated to the public use.

Dedication to Public Use

Louisiana has never enacted a comprehensive statutory scheme of dedication to public use. However, Louisiana courts have recognized four modes of dedication: formal, statutory, implied and tacit. Braxton v. Guillory, 98-379, p. 14 (La.App. 3rd Cir.10/28/98), 721 So.2d 114, 122. In the present case formal,[1] statutory,[2] and tacit[3] dedication are not at issue. Therefore, the determination of whether the boat launch and canal are dedicated to public use rests solely on the issue of whether the requirements for implied dedication have been met.
Implied dedication, in contradistinction with formal dedication, may be accomplished without any express or written act and creates a servitude of public use. Thompson v. State, 94-2610, p. 11 (La.App. 1st Cir.4/23/96), 688 So.2d 9, 29, aff'd, 97-0293 (La.10/31/97), 701 So.2d 952; Collins v. Taylor, 518 So.2d [7602, 606 (La.App. 1st Cir.1987). In Thompson, this court articulated the essential elements and requirements of implied dedication:
The essential feature of implied dedication is the absence of requisite formalities. However, there must be “a plain and positive intention to give and one equally plain to accept.” Thus, the two indispensable elements of implied dedication are: proof of a positive intent to dedicate, frequently qualified as “offer”, and proof of acceptance by the public. *564 The offer may be implied from facts or acts of the owner that exclude any other rational hypothesis except an intent to dedicate and the acceptance may be inferred from actual use of the property by the public.
Thompson v. State, 94-2610 at 11, 688 So.2d at 29-30 (citations omitted).
However, there seems to be some confusion in the case law as to what is sufficient to establish the requisite intent of the landowner to so dedicate his property forever to the public use. Appellants, PAW-RA and Melva Cressionie, rely on our decision in Best Oil Company v. Parish Council of the Parish of East Baton Rouge, 176 So.2d 630 (La.App. 1st Cir.1965), writ refused, 248 La. 365, 178 So.2d 656 (1965) to assert that intent to dedicate can be implied from the acts, conduct or declarations of the landowner, including mere toleration or acquiescence in the public use. (Emphasis added.) However, in Best Oil, in stating that implied dedication requires public use of dedicated property with the assent of the owner, silent or otherwise, we clearly referred to the supreme court decision Wyatt v. Hagler, 238 La. 234, 114 So.2d 876 (La.1959), which dealt only with tacit dedication, which has separate and distinct requirements from those establishing implied dedication. Best Oil Company v. Parish Council of the Parish of East Baton Rouge, 176 So.2d at. 635; see also B.F. Trappey’s Sons, Inc. v. City of New Iberia, 225 La. 466, 73 So.2d 423 (La.1954) and Town of Eunice v. Childs, 205 So.2d 897 (La.App. 3rd Cir.1967), writ refused, 251 La. 937, 207 So.2d 540 (1968) (concerning tacit dedication and stating that assent can be established by silence).
IsOther circuit courts and the supreme court, over time, have recognized acquiescence or silence of the owner in the public use as a factor in establishing the requisite intent. In Collins v. Zander, 61 So.2d 897 (La.App.Orleans 1952), involving dedication of a 15' lawn walk, the court was presented with evidence in addition to the mere acquiescence of the landowner to estabhsh the requisite intent. First, the landowner and developer of the subdivision in which the lawn walk was located, recorded a plan indicating the “15' lawn walk” and reflecting that it was “to be used by the occupants as a medium of ingress and egress.” Additionally, in Zan-der, the court found that this evidence was sufficient to estabhsh not only an implied dedication but also to estabhsh substantial compliance with the then existing basis for statutory dedication. Therefore, the court was clearly presented with clear, unequivocal evidence of intent to dedicate, in addition to mere acquiescence of the landowner.
In Winningham v. Hill, 164 So.2d 384 (La.App. 2nd Cir.1964), quoting United Gas Pipe Line Company v. New Orleans Terminal Company, 156 So.2d 297 (La.App. 4th Cir.1963), writ refused, 159 So.2d 284 (La.1964), the court stated the following regarding intent necessary to estabhsh an implied dedication:
Whether there has been an intent to dedicate property to public use is a question of fact which may be inferred only from acts of acquiescence from the owner that would exclude every hypothesis but that of dedication. Mere silence on the owner’s part and failure to protest against the use of land by the public does not in law amount to an assent to a dedication to public use. (Citations omitted).
The court in Winningham, as the court in Zander, was presented with whether a recorded plat met the requirements of statutory dedication so as to dedicate a twenty-foot strip of property to the public use. In Winningham, the court determined that *565 the requirements for statutory dedication were not substantially complied with due to the failure on the part of the landowner to designate the twenty-foot strip of land as a street, road, etc. on the plat. The court further found 19that “the absence of symbols or marks to designate some use from which may be inferred a public purpose is a strong indication that the owner intended to retain the use of said property for private purposes.” Winningham v. Hill, 164 So.2d at 386.
The decisions of the courts in Winningham and Zander show that while acquiescence and silence may be a factor in determining the landowner’s intent to dedicate, they are not the sole factors considered when making such a determination. In both decisions, other substantial evidence in the form of a recorded map or plat, was present in addition to the silence or inaction of the landowner.
Finally, in Bomar v. City of Baton Rouge, 162 La. 342, 347, 110 So. 497, 499 (La.1926), the supreme court stated that “silence and failure to protest do not in law amount to an assent to a dedication to public use.” See also McCearly v. Lemeunier, 40 La. Ann. 253, 3 So. 649 (La.1888) (finding that 30 years of use by the public of a road by sufferance or tolerance of the owner was insufficient to convert a private into a public road); Torres v. Falgoust, 37 La. Ann. 497 (La.1885) (finding dedication to public use cannot be inferred from the mere use alone). In Bomar, a road had been used by the public for a period of approximately seventy years without protest from the landowner. However, there were no other factors present, besides the landowner’s tolerance and silence, to establish the landowner’s intent to dedicate the road to public use. In finding silence and failure to protest alone insufficient to establish a landowner’s intent to dedicate, the court also articulated other factors which, in combination with the landowner’s silence, might be more indicative of intent. These factors consist of maintenance by public authorities or recorded maps indicating the land in question is for public use. See Bomar v. City of Baton Rouge, 162 La. at 347-348, 110 So. at 499-500; see also Hatton v. Grigar, 66 S.W.3d 545, 554-555 (Tex.App.2002) (listing the following as additional factors to be considered: (1) permitting public authorities to grade, | mrepair, or otherwise improve roadway, (2)selling parcels of land from a plat or plan showing the roadway as a means of access to the parcels, (3) construction of facilities for general public use, (4) an express representation by the owner of the road to a land purchaser that the way is reserved for public use, (5) fencing off the roadway from the remainder of the land, or (6) obtaining a reduction in the purchase price commensurate with the area of the roadway).
Therefore, based on the law as outlined above, we find while silence or acquiescence may be used as a factor in determining a landowner’s intent, it alone is not sufficient to establish the unequivocal and positive intent necessary for an offer to dedicate to the public use. See Bell v. Tycer, 97 So.2d 448, 450 (La.App. 1st Cir.1957) (finding silence and failure to protest does not in law amount to an assent to a dedication to public use); see also Hatton v. Grigar, 66 S.W.3d at 554 (stating that the intention to dedicate must be shown by something more than an omission or failure to act or acquiescence on the part of the owner and that there must be evidence of additional factors that imply a donative intention when considered in light of the owner’s acquiescence in the public’s use of the roadway); Carlson v. Burkhart, 271 Kan. 856, 27 P.3d 27, 32 (2001) (stating that acquiescence of the property owners to use by some members of the public does *566 not conclusively establish its dedication for public use and mere permission on the part of the owner to the public to use the land as a way, without more, will not constitute an intention to dedicate). Rather, other significant factors, such as a recorded map or plat or maintenance by the public authorities must be present in order to establish the landowner’s intent.

Classification of Canal and Susceptibility to Dedication

First, we note that it is clear that the canal is a private thing and as such is susceptible to dedication to public use, as in the case of roads and streets. See 2 A.N. Yiannopoulos, Louisiana Civil Law Treatise § 79 (4th ed.2001). There have _J>ubeen some allegations that the canal is a public thing due to the nature of the ownership at the time of the canal’s construction.[4] However, we find these allegations to be without merit as the State was participating in its private capacity and subsequently was divested of any interest it may have had at the time of construction by a subsequent legislative act and sale to a completely private company.[5]
Additionally, the fact that the canal is navigable in fact does not thereby render it public. In National Audubon Society v. White, 302 So.2d 660, 667 (La.App. 3rd Cir.1974), writ denied, 805 So.2d 542 (La.1975), the court stated that a privately owned canal, though navigable in fact, may not be subject to public use for the same reasons that a private road, though used by commercial traffic, may not be subject to public use. Also, in Brown v. Rougon, 552 So.2d 1052, 1060 (La.App. 1st Cir.1989), writ denied, 559 So.2d 121 (La.1990) this court addressed the issue of use of public funds in the construction of a canal and stated that “the use of public funds in the construction of a navigable canal does not necessarily create a public right to use the canal.” We agree and find that while some State funds were used in constructing the canal at issue, such funds were to be repaid and any outstanding indebtedness was so repaid by a completely private canal company referred to as B & L No. 2.

The Canal and Boat Launch

In the instant case, the evidence adduced at trial showed that the public had been using both the canal and the boat launch for approximately 60 years. During |1gthis time of use, the prior owners of the canal and boat launch, Mr. and Mrs. Gheens and later the Gheens Foundation, never interfered with the general use by the community. Melva Cressionie additionally testified that Pete Taylor, while manager of the Golden Ranch Plantation, told her and her husband that the boat launch was public.
*567 Additionally, PAWRA and Melva Cres-sionie presented evidence regarding maintenance of the boat launch and canal. First, evidence was presented that some members of the community performed minor acts of maintenance on the boat launch such as placing shells where the vehicles and boats entered. Also, evidence showed that the Army Corps of Engineers, a federal institution, sprayed the vegetation in the canal for a period of years. Ray Blouin, an inspector with the Army Corps of Engineers, testified that he has worked the canal and other waterways in La-fourche Parish since he began working for the Corps in 1975, and the spraying was generally from April to December annually. Documents were entered into evidence that particularly showed spraying activity from 1995-1999. While Ray Blouin testified that the Army Corps of Engineers generally does not spray private canals, he did state that if the canals were private, but used by the public or by the oil industry, they would be sprayed unless gated under lock and key.
Finally, PAWRA and Melva Cressionie presented evidence that at some point, the parking area around the boat launch was enlarged by the landowners due to the need for additional space to prevent cars from parking on the side of the highway.
In contrast, Cenac offered evidence and testimony showing efforts of the landowners to assert private ownership over the canal and boat launch. First, the 113record evidences that the prior owners maintained signs indicating that the property was “private property”. Herman Robi-chaux, manager for the Gheens Foundation mineral department, has worked on the property since 1963 and testified that at least since 1968 or 1969, he posted and maintained private property signs on the canal. and boat launch. Mr. Robichaux also testified that these signs were placed at points of entry and exit to the canal. Additionally, Larry Ledet, the property manager for Cenac, and Forrest Travirca, the security manager of Golden Ranch Plantation, testified that they recalled seeing signs posted along the property. Mr. Ledet recalled seeing signs as early as 1987, when he began working on the Plantation. Mr. Travirca testified when he saw the signs stating “private property” he sought permission to use the canal from Mr. Taylor, who advised him to speak with Mr. and Mrs. Gheens in order to obtain permission to use the canal.
Additionally, former and current employees, Mr. Robichaux and Donald Doyle, President of the Gheens Foundation and former attorney of Mr. and Mrs. Gheens, testified their orders from Mr. and Mrs. Gheens were always to keep the canal and boat launch private. Additionally, Mr. Ro-bichaux and Mr. Doyle testified that while the public was given permission to use the boat launch and canal, it was in an effort to be neighborly and was never intended to bé inconsistent with the owners’ private ownership. Rather, the owners retained the right to restrict use of the canal and boat launch, which is evidenced by the testimony of Mr. Robichaux, wherein he stated that he asked members of the public to leave if they were acting inconsistent with the law or with the owner’s desire (ie. hunting or using it for commercial fishing).
Finally, evidence presented at trial showed that Mr. and Mrs. Gheens and the Gheens Foundation entered into various leases with members of the community for hunting or other purposes, allowing those persons to use the canal and use and park at the boat launch. Testimony at trial indicated that when large groups were [ 14involved, or groups using the hunting club facilities, those groups were given a key to the “private boat launch” located across the canal as the boat launch in issue *568 had limited space. Additionally, an agreement with the local Jaycees was admitted into evidence. The agreement granted the Jaycees the right to use the canal and boat launch and stated as part of that agreement, the Jaycees were to monitor and police the use of the canal by the general public.
Based on the foregoing, we find that PAWRA and Melva Cressionie failed to establish the plain and positive intent of the landowners to dedicate the canal and boat launch to public use. The bulk of PAWRA and Melva Cressionie’s evidence concerns the long use by the public of the boat launch and canal, coupled with the acquiescence of the landowners in that use. However, as articulated above, such use and acquiescence alone is insufficient to establish a plain and positive intent to dedicate.
Additionally, we do not find that the remaining evidence of minor maintenance performed by the community members and by the Army Corps of Engineers lends aid in establishing the plain and positive intent of the landowners to dedicate. First, the minor maintenance performed by the community members does not constitute maintenance by “public authorities” as articulated above. Also, the minor occasional spraying performed by a federal institution does not rise to the level of repair or other work performed by public authorities, which together with the landowner’s silence, excludes every hypothesis but that of dedication. This is particularly so when viewed with the remainder of the evidence presented at trial showing the continued efforts and desire of the landowners to retain the private nature of their property.
Therefore, in light of the lack of evidence establishing the landowners’ plain and positive intent to dedicate the canal and boat launch to public use, and considering the evidence presented as to the instructions and efforts of the | ^landowners to secure the private nature of their property, we find that there was no implied dedication of either the canal or the boat launch to the public use.
As our determination of the issue of implied dedication disposes of the appeal, we pretermit a discussion of appellants’ remaining assignments of error.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court granting a permanent injunction as to the boat launch and we reverse the judgment of the trial court declaring the canal to be dedicated to the public use by implied dedication. All costs of the appeal are to be borne by appellants, PAWRA, et al.
AFFIRMED IN PART AND REVERSED IN PART.

. A landowner may make a formal dedication of a parcel of property by virtue of a written act, such as a deed of conveyance to the police jury of the parish. Braxton v. Guillory, 98-379 at 14, 721 So.2d at 122.

. La. R.S. 33:5051.

. Louisiana Revised Statutes 48:491(B)(l)(a) provides as follows: [a]ll roads and streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property. Although the word "tacit” does not appear in 48:491(B), dedication accomplished under 48:491(B) has become known as "tacit dedication” of a road or street through the jurisprudence.

. Barataría and Lafourche Canal Company (B & L), comprised of two private individuals, received a charter from the State of Louisiana to build a canal from New Orleans to Morgan City. By legislative acts, B & L was designated as a "political and corporate body” and was given authority to purchase property over which the "Company Canal” was to be built. The property underlying the portion of Company Canal at issue in this case was transferred by a private landowner to B & L in 1829. Additionally, subsequent legislative acts provided for the State to purchase amounts of stock in B & L and to appropriate money, equipment and labor for the building of the canal. However, these legislative acts also provided that the State was to be repaid amounts expended. See 1829 La. Acts 38, 1833 La. Acts 3, 1834 La. Acts 22, 1835 La. Acts 78, and 1848 La. Acts 80.

. When B & L failed to complete the canal and pay back monies owed, the State, pursuant to a final legislative act, divested itself of its interest in B & L and subsequently sold its interest to a completely private canal company for $25,000.00 as payment of outstanding debt. See 1858 La. Acts 205.