KING, Judge.
The issues presented by this appeal are the correctness of the trial court’s finding that the plaintiffs proved record title to portions of the property in dispute and that the defendant failed to prove his ownership to the entire property in dispute by record title or by acquisitive prescription of ten or thirty years.
The plaintiffs instituted a petitory action against the defendant, claiming ownership by record title of an approximately two-hundred (200) acre tract of land located in Catahoula Parish, Louisiana, which the plaintiffs judicially admitted was in possession of the defendant. The defendant answered, denying that the plaintiffs were the owners of the property by record title, and reconvened to be recognized as the owner of the property. After a trial on the merits, the trial court held that the defendant was the owner of a portion of the property, that the plaintiffs were each co-owners with the defendant of certain other portions of the property, and that the plaintiffs were owners in indivisión of the remainder of the property. Defendant appeals. We affirm.
FACTS
On August 19, 1983, the Estate of J.M. Fisher and the Estate of H.M. Fisher (hereinafter referred to as plaintiffs) instituted a petitory action against Willie B. Otwell (hereinafter referred to as defendant) asserting their ownership by record title of an approximately two-hundred (200) acre tract of land located in Catahoula Parish, Louisiana, generally described as being in the central portion of the John Scoggins Riquet, Section 46, Township 9 North, Range 5 East.[1] In their petition, plaintiffs judicially admitted that defendant was in possession of the property. Plaintiffs prayed that defendant be ordered to surrender possession of the property, and additionally prayed that they be awarded damages for defendant’s alleged illegal trespass upon the property and defendants’ sale of timber and gravel taken from the property.
Defendant filed an exception of prescription, asserting ten and thirty year acquisitive prescription, which was heard by the trial court. This exception was denied by the Court. Defendant then filed an Answer and a Reconventional Demand asserting his ownership of the property in dispute by record title and by acquisitive prescription of ten and thirty years. The case was tried on the merits on April 2, 1984. During the trial, plaintiffs introduced into evidence documents that established their chain of title to the property back to the sovereign, including evidence of the purchase of the property in 1905 by their ancestors-in-title, J.M. Fisher and H.M. Fisher, from John S. Webb. During the trial of *674 the exception of prescription and during the trial on the merits, defendant also introduced into evidence documents which, when combined with documents in plaintiffs’ chain of title, established defendants’ chain of title to certain portions of the property in dispute. These documents are briefly outlined as follows:
1. On April 13, 1899, Z. Blackman conveyed to J.M. Fisher the northwest thirty-seven (37) acres of the property in dispute;[2]
2. On September 8, 1947, J.M. Fisher conveyed to O.N. Edwards and O.E. Breithaupt the northern seventy-five (75) acres of the property in dispute, including the 37 acres obtained by J.M. Fisher from Z. Blackman;
3. On July 16, 1955, H.M. Fisher conveyed to O.N. Edwards and O.E. Breithaupt the southern thirty-eight (38) acres of the property in dispute;
4. On April 11, 1969, O.N. Edwards and the widow and the sole heir of O.E. Breithaupt conveyed to Wilkin L. Holmes the property previously acquired by them from the Fisher brothers;
5. On April 10, 1975, W.L. Holmes conveyed to defendant, Willie B. Otwell, the property he had acquired.
The description of the property in the 1969 deed from Edwards and Breithaupt to Holmes and in the 1975 deed from Holmes to the defendant were translative of title to the entire property in dispute. Defendant bases his claim of acquisitive prescription of ten years on these deeds.
On August 20, 1984, the trial judge rendered and signed a judgment in which he decreed (1) defendant to be the sole owner of the northwest 37 acres of the property in dispute, being the same 37 acres conveyed by Z. Blackman to J.M. Fisher; (2) defendant and the plaintiff, Estate of H.M. Fisher, to each be the owners of an undivided one-half interest in the northern 75 acres of the property in dispute, excluding the northwest 37 acres decreed to be solely owned by defendant; (3) defendant and plaintiff, Estate of J.M. Fisher, to each be the owners of an undivided one-half interest in the southern 38 acres of the property in dispute; and (4) plaintiffs, the Estate of J.M. Fisher and Estate of H.M. Fisher, to be the owners of an undivided one-half interest in the remainder of the property in dispute, this property consisting of the property lying between the northern 75 acres and the southern 38 acres conveyed to defendant, which consists of approximately 100 acres. The trial judge rejected all demands of plaintiffs against the defendant for damages and taxed costs equally one-half to plaintiffs and one-half to defendant.
Defendant filed a Motion for New Trial which was denied. Defendant then timely filed this suspensive appeal in which he contends that (1) the trial court erred in finding that plaintiffs had proved record title to portions of the 203.14 acres in dispute; (2) the trial court erred in failing to find that he had proved record title of the entire 203.14 acres in dispute; and (3) the trial court erred in failing to find that he proved ownership by acquisitive prescription of ten years of the entire 203.14 acres in dispute. Plaintiffs neither filed an appeal or an answer to defendant’s appeal.
RECORD TITLE OF PLAINTIFFS
One who claims the ownership of an immovable against another in possession must prove that he has acquired ownership from a previous owner or by acquisitive prescription. LSA-C.C. Art. 531; LSA-C.C.P. Art. 3653(1). In other words, plaintiffs must be able to show title good against the world without regard to the title of the defendants. Pure Oil Company v. Skinner, 294 So.2d 797 (La.1974); Weaver v. Hailey, 416 So.2d 311 (La.App. 3rd Cir.1982), writ not considered, 420 So.2d 159 (La.1982). When the titles of the *675 parties are traced to a common author, he is presumed to be the previous owner. LSA-C.C. Art. 532; LSA-C.C.P. Art. 3653. Nevertheless, this presumption is rebut-table. See Comment (b) to LSA-C.C. Art. 532.
As previously stated, plaintiffs established their chain of record title to the property from the sovereign. Defendant also established his chain of record title, which stems from a common author in plaintiffs’ chain of record title. Since plaintiffs carry the burden of proving their acquisition of ownership of the property from a previous owner or by acquisitive prescription, defendant first argues that plaintiffs have not met their burden of proof since John S. Webb, plaintiffs’ and defendant’s common author and predecessor-in-title, was not the owner of the property in dispute at the time that he conveyed the property to plaintiffs for the following reasons. First, defendant contends that an instrument which is included in the plaintiffs’ chain of title, specifically an instrument dated January 16, 1872, from John F. Marshall to Eliza Tison and Green W. Stephens, contains only a conveyance of a “three undivided fourths” of the property. Defendant further contends that this same conveyance of a partial interest in the property continues through the next link in the chain, by which Tison conveyed to Stephens her interest in “three undivided fourths” of the property. Defendant contends that plaintiffs’ chain of title to the property is “broken” because Marshall and Tison did not transfer all of their interest in the property. This contention is without merit. In his well-written reasons for judgment, the trial judge noted:
“Exhibit P-3 [Marshall’s conveyance to Tison and Stephens] does not deal with an undivided interest in the property. The property covered by that intruement [sic] is described as three-fourths of Ri-quet No. 784, (which is the John Scoggins Riquest [sic] as described in P-1), and situated on Bushley Creek in the Parish of Catahoula in said State in Township 9 North, Range 5 East, said three-fourths containing four hundred and eighty acres more or less.
The maps of this property show that Bushley Creek runs in an east-west direction across the Scoggins Riquet in such a position as to make all that portion south of said creek, which is where the property in dispute is located, to be approximately three-fourths of the ri-quet.
Exhibit P-4 [Tison’s conveyance to Stephens] lends more substance to the Defendant’s argument because the property described in that deed is 'three undivided fourths of Riquest [sic] No. 784’, et cet-era. Accepting Defendant’s argument about interpretation of P-4, the record title of the property would then rest only partially in Stephens, the remaining portion of the record title resting in Eliza Tison.
On the other hand, Plaintiff argues first that Exhibit P-3, which does not contain any language about an undivided interest, is simply a conveyance to Tison and Stephens of that portion of the ri-quet south of Bushley Creek. He argues further that since Tison and Stephens each owned an undivided one-half of the property, that the conveyance of the undivided three-fourths in P-4 by Tison to Stephens actually took Tison completely out of the property and vested full titles in Stephens.
* * * * * *
I agree with the Plaintiff’s arguments on this point and do not believe that these documents cause any problems with respect to Plaintiff’s chain of ownership.”
We approve of the trial judge’s analysis of the two conveyances. In further support of the trial judge’s conclusion that Marshall conveyed to Tison and Stephens the south three-fourths, not “three undivided fourths” of Riquet No. 784 (which contains the property in dispute), we note that the property conveyed by Tison to Stephens was further described as being the same “three fourths of the portion of said Riquet *676 purchased by J.F. Marshall at the [word illegible] sale of said Riquet.”
Defendant next argues that John S. Webb was not the owner of the property in dispute at the time that he conveyed the property to plaintiffs because the marital status of various vendors and vendees was not stated in some of the instruments comprising the plaintiffs’ chain of title. Defendant cites Rivet v. Dugas, 377 So.2d 489 (La.App. 4th Cir.1979) as support for his argument that the lack of declaration of marital status of the various vendors and vendees who are in plaintiffs’ chain of title defeat the plaintiffs’ ability to prove their ownership of the property “good against the world.” In Rivet, the court held that certain instruments included in the plaintiffs’ chain of title made the chain suggestive of litigation because the instruments did not contain any declaration of marital status by any of the persons named in the instruments. The plaintiffs’ chain of title in Rivet included certain women who apparently were married at the time of their acquisition of the property. The court stated that the instruments left unanswered what rights their husbands had, if any, in the property since there was “no declaration that either spouse acquired for their separate estates.” The trial judge considered this argument and we quote with approval from his reasons for judgment as follows:
“There is nothing on the face of these transfers that indicates their invalidity or is suggestive of litigation. At the time these documents were executed, a husband had full authority to deal with community property. There is nothing in any of these documents to indicate that any of the parties were married, and even if they were, the documents on their face would appear to be valid. There was some testimony at trial, but not in the record title, that one of the Fishers had been married and that one of them had never married. However, there is no information whatsoever about any of the other parties.”
We further note that if defendant were correct in his position that Webb, defendant’s and plaintiff’s common author in title, did not own the property, because only a part interest was conveyed by former owners or because of lack of declaration of marital status of the various vendors and vendees in the chain of title, this would also defeat the defendants’ ability to prove his alternative claim that he has record ownership of the property as “good against the world” since these same documents appear in and form part of the defendants’ chain of title.
Finally, defendant argues that plaintiffs’ chain of title to the property is defective because of an uncertainty as to the location of the southern boundary line of the property. Defendant contends that plaintiffs’ petition describes the property as being bounded on the south by “the northerly line of that certain 124 acre tract of land sold by J.M. Fisher, et al, to August Mann ...,” and that a survey of the property made by James M. Hawkins, Jr. in 1982 shows that the southern boundary line on the Hawkins plat does not conform to the metes and bounds in the 1906 deed from Fisher to Mann. The record shows that Mr. James Hawkins prepared a plat which was used as basis for a boundary agreement between International Paper (the successor-in-title to the Mann property) and defendant to fix the defendant’s southern boundary after the defendant purchased the southern 38 acres of the property in dispute. We find that the trial court was not manifestly in error in failing to find the plaintiffs’ chain of title defective on the basis of an alleged uncertainty as to the location of the southern boundary line of some of the property in dispute.
RECORD TITLE OF DEFENDANT
In his second assignment of error, defendant contends that the trial court erred in failing to find that he proved record title in full ownership of the entire property in dispute. As previously stated, J.M. Fisher conveyed the northern seventy-five (75) acres of the property in dispute in *677 1947. H.M. Fisher conveyed the southern thirty-eight (38) acres of the property in dispute in 1955. Both sales were to O.N. Edwards and O.E. Breithaupt, who later conveyed the property to Wilkin L. Holmes, defendant’s immediate predecessor-in-title. Both of these instruments stated that the conveyances were of portions of a tract containing 113 acres, when in fact the entire tract contained approximately 200 acres.
In his reasons for judgment the trial judge stated:
“I do not agree with Defendant’s interpretation of D-l and D-2. [D-l is the deed from J.M. Fisher to O.N. Edwards and O.E. Breithaupt and D-2 is the deed from H.M. Fisher to O.N. Edwards and O.E. Breithaupt.] The property conveyed is clearly set out as a specific number of acres rather than a fractional figure of the whole. In each case the number of acres conveyed are said to come out of a tract which is misdescribed as containing one hundred and thirteen acres, but is also correctly described by specific metes and bounds. Furthermore, the intent in each deed is clearly set forth at the end of the description as indicated in the emphasized portions set out. [D-l and D-2 provided a metes and bounds description of the property conveyed and also provided that they conveyed a portion of the land acquired by the Fisher brothers from Webb. This fact was emphasized by the trial judge in his decision.] In Exhibit D-l, J.M. Fisher clearly stated his intent to convey all of the thirty-seven acres he acquired from Blackman and a portion of the property which he and his brother had acquired from Webb. H.M. Fisher likewise, some eight years later, clearly set out that he was conveying thirty-eight acres and this was only a portion of the lands which he and his brother had acquired from Webb. The description in the tract in these deeds as containing one hundred and thirteen acres is clearly erroneous and must give way to the accurate metes and bounds description.
Defendant’s speculation that the sales by the Fisher brothers eight years apart exhibit an intent to convey all lands owned by them because seventy-five plus thirty-eight equals one hundred and thirteen, while conceivably correct, cannot be used to vary the specific language of the documents.”
Since only one of the two Fisher brothers participated in each of these sales, the trial judge held that the non-participating Fisher brother (and thus his estate) each retained his undivided interest in the portion of the property sold by his brother. The trial judge additionally found that both Fisher brothers (and thus their estates) each retained their one-half ownership in indivisión of the remainder of the property, located between the northern 75 acres and the southern 38 acres involved in the two conveyances, since it was not sold.
Defendant first argues that J.M. Fisher and H.M. Fisher entered into an informal, unwritten partition of the property, and that the subsequent conveyances of the 75 acres and 38 acres were therefore conveyances of full ownership of the property. Defendant cites Shell Oil Co. v. Hebert, 373 So.2d 1339 (La.App. 1st Cir.1979), writ den., 376 So.2d 318 (La.1979), in support of his contention that the Fisher brothers entered into an informal partition. In Shell Oil, the First Circuit Court of Appeal held admissible an ancient plat of survey and proces verbal that indicated that a division of a certain tract of property into two equal halves had taken place. The plat was not signed by either of the two parties whose names were listed on the plat, and the plat was not recorded. The court held that the plat, along with other evidence, indicated an intention on the part of the parties, whose names were shown on the plat, to informally partition the property.
The soundness of the Court of Appeal’s finding in Shell Oil that an informal partition is legally possible is questionable in light of the language employed in the Louisiana Supreme Court’s denial of a writ *678 requested on behalf of the appellant.[3] However, it may be argued that informal partitions are recognized in Louisiana. See Chaumont Oil Co. v. LeBlanc, 185 La. 640, 170 So. 21 (1936). In the instant case, the trial judge stated that he recognized the existence of the “Chaumont Doctrine,” and did in fact consider the facts of the Chaumont case in determining whether or not the Fishers informally partitioned the property. There are some facts which lend credence to defendant’s argument that the Fishers did informally partition the property. First, Mrs. Louise Alexander, Deputy Assessor of Catahoula Parish, testified that 74 acres of land described as “John Scroggins [sic] Ricquet [sic] No. 46, Township 9 North, Range 5 East” were assessed in the name of J.M. Fisher from 1918 through 1947, excluding only a couple of years, and that 38 acres of land were assessed in the name of H.M. Fisher from 1918 through 1955, also excluding only a couple of years. However, approximately one-half of the certificates of assessment under the name of H.M. Fisher described the property as the John Scoggins Riquet, Section 46, Township 9 North, Range 5 East. Second, Mr. Roy Fisher, a brother of J.M. Fisher and H.M. Fisher, testified that his brothers had an agreement that one brother would take part of the property and the other brother would take the remaining part of the property. Third, J.M. Fisher individually conveyed the northern 75 acres in 1947, and H.M. Fisher individually conveyed the southern 38 acres in 1955.
The trial judge in his reasons for judgment stated:
“The Court in the Chaumont case made note of the fact that considerable testimony was shown that a dividing line had been developed between the north and south half of the property. They also indicated that the dividing line was indicated by a turnrow and other indicia of a boundary line. No such evidence is in existence in this case. Furthermore, there were elements of estoppel present in the Chaumont case which are not present here.
I therefore do not believe that this record is strong enough to establish that the Fisher brothers actually partitioned this property, and that it was their intention that the informal partition have the effect of a valid legal partition.”
We do not find that the trial court’s finding of fact that the Fishers did not informally partition the property is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
ACQUISITIVE PRESCRIPTION
In his third assignment of error, defendant claims that the trial court erred in failing to find that he proved his ownership of the entire tract of property by acquisitive prescription of ten years. The requisites for acquisitive prescription of ten years are (1) possession for ten years, (2) good faith, (3) just title, and (4) a thing susceptible of acquisition by prescription. LSA-C.C. Art. 3475. A good faith purchaser of property under just title may tack the possession of a good faith author-in-title to his possession in order to satisfy the requisite ten years of possession. Bartlett v. Calhoun, 412 So.2d 597 (La.1982); LSA-C.C. Art. 3442.
Defendant did not purchase the property until 1975 and plaintiffs instituted this suit in 1983 which was within ten years from the time of defendant’s purchase. Defendant’s deed of acquisition is translative of title to the property but he alone could not have acquired a title by acquisitive prescription of ten years since he had not owned the property for ten years before this suit was filed. Therefore, defendant must either prove that one of his ancestors- *679 in-title acquired the property by acquisitive prescription or that he acquired the property by acquisitive prescription with the aid of tacking of the possession of his ancestors-in-title.
No evidence was presented regarding possession of the property by Holmes, defendant’s immediate ancestor-in-title. The trial judge found that there was no evidence of use of the property after 1969 when Holmes purchased the property, until 1975, when defendant purchased the property. We agree with this finding of fact by the trial judge after review of the evidence in the record.
Defendant next contends that O.N. Edwards and O.E. Breithaupt acquired the property in dispute by acquisitive prescription of ten years, and that they conveyed this ownership to Holmes, who in turn conveyed his ownership in the property to defendant. Initially, we note that as to the portion of the property to which Edwards and Breithaupt had no title (that portion of the property located between the northern 75 acres and the southern 38 acres) their lack of just title would prevent them from acquiring this portion of the property by acquisitive prescription of ten years. LSA-C.C. Art. 3475. However, as to the northern 75 acres and the southern 38 acres, Edwards and Breithaupt could acquire these portions of the property by ten years acquisitive prescription if (1) their possession was continuous, uninterrupted, peaceable, public and unequivocal, and (2) they demonstrated by overt and unambiguous acts to their co-owners (H.M. Fisher with regard to the northern 75 acres and J.M. Fisher with regard to the southern 38 acres) that they intended to possess these portions of the property for themselves. LSA-C.C. Arts. 3478 and 3475.
Mr. O.N. Edwards testified that he employed Mr. Pump Terral to inspect the property for himself and Mr. Breithaupt. There was also evidence that Edwards and Breithaupt granted a gravel lease and an oil and gas lease on the property. The trial judge considered this evidence and in his reasons for judgment said:
“When Edwards and Breithaupt bought the property they did not have record title of the whole tract for the reasons heretofore set forth. They bought the property for speculation purposes only. The only evidence with respect to their possession is that Edwards actually walked on a portion of it at one time, had the timber checked, granted a mineral lease which was never exercised, and possibly sold a small amount of pulpwood. Several witnesses testified that they cut a small amount of pulpwood on the property at one time, but it is not clear at all under whose authority the cutting took place, nor the actual location of the pulpwood cutting and the quantity of the pulpwood removed. In fact, O.N. Edwards testified that in 1947 he really exercised no type of corporeal possession.”
We agree with the trial judge that defendant has not met his burden of proving acquisitive prescription of ten years by Edwards and Breithaupt, between 1947 and 1955 when they bought the property and 1969 when the property was sold. We do not find that this finding of fact by the trial judge is clearly wrong. Arceneaux v. Domingue, supra.
Defendant finally contends that the corporeal possession of the Fishers can be tacked to the civil possession of Edwards and Breithaupt in order to show that Edwards and Breithaupt acquired the property by ten year acquisitive prescription. Such a contention is totally without merit. With regard to most of the property in dispute, for which Edwards and Breithaupt had no title, there could be no acquisitive prescription of ten years on the part of Edwards and Breithaupt because of their lack of just title. With regard to the portions of the property co-owned by Edwards and Breithaupt and one of the Fisher brothers, it is axiomatic that the possession of the co-owning Fisher brother cannot be used against the other Fisher brother’s ownership of the property in favor of Edwards and Breithaupt to establish their ownership by acquisitive prescription. We *680 conclude that the trial court’s failure to find that defendant proved his ownership of the entire property in dispute by ten year acquisitive prescription is not clearly wrong. Arceneaux v. Domingue, supra. Since we find that the defendant failed to prove that he acquired the property by acts of possession occurring during ten years, it certainly follows that he could not prove acts of possession occurring for thirty years.
For the reasons assigned above, the judgment of the trial court is affirmed at defendant-appellant’s costs.
AFFIRMED.

. The property in dispute is more particularly described as follows:
"Beginning at a point on the West line of Section 46, Township 9 North, Range 5 East, in the center of Bushley Bayou: thence southeasterly with the meandering of the said Bayou to the east line of Section 46; thence south 18 degrees 45 minutes west along the east line of Section 46 to a point 40 chains north 18 degrees 45 minutes east from the SE corner of Section 46; thence westerly with the northerly line of that certain 124 acre tract of land sold by J.M. Fisher, et al, to August Mann (on April 9, 1906, as shown by deed recorded in Conveyance Book 18, page 352, and now owned by Southern Kraft Corporation), to the west line of Section 46; thence north on said west line of Section 46 to Bushley Bayou, and the point of beginning. Being a portion of the lands acquired by J.M. Fisher, et al from J.S. Webb as shown by deed recorded in Conveyance Book 15, page 384, and being all that tract of land acquired by J.M. Fisher from Z. Blackman, on April 13, 1899 as shown by deed recorded in Conveyance Book 7, page 565, of the records of Catahoula Parish, Louisiana."

. This conveyance preceded the 1905 purchase of the property by the Fisher brothers from John S. Webb.

. The following is found in connection with the writ application in Shell Oil Co. v. Hebert, 376 So.2d 318 (La.1979):
"Writ denied. While the rationale of the Court of Appeal may be incorrect, the result herein is correct.
TATE and DIXON, JJ., concur in the denial. The trial court correctly sustained the pleas of prescription: title cannot be acquired or lost by ‘estoppel.’ ”