721 So.2d 114 (1998)
James Larry BRAXTON, Plaintiff-Appellant,
v.
Michael GUILLORY, et ux., Defendants-Appellees.
No. 98-379.
Court of Appeal of Louisiana, Third Circuit.
October 28, 1998.
*116 Errol David Deshotels, Oberlin, for James Larry Braxton.
Carl H. Hanchey, Lake Charles, for Michael Guillory, et ux.
Before YELVERTON, THIBODEAUX and SAUNDERS, JJ.
THIBODEAUX, Judge.
James Larry Braxton sued Michael and Agnes Guillory for trespass, seeking damages for a road and pipeline over Braxton property and seeking an injunction to enjoin the Guillorys from using the road to access the Guillorys' property. Following a trial on the merits, the district court denied Braxton an injunction and mental anguish damages, granted the Guillorys a servitude of passage, and awarded Braxton $300.00 as compensation for the damage occasioned by the servitude of passage. We find that the evidence provides a reasonable factual basis for the conclusions of the trial court and affirm the judgment and awards granted.

I.

ISSUES
The issues to be decided are:
1) whether the defendants' property constitutes an enclosed estate invoking La. Civ.Code art. 689; and
2) whether the road over plaintiff's property has been dedicated for public use.

II.

FACTS
Michael and Agnes Guillory purchased land on April 22, 1991, from Michael's sister and her husband, the Caesars. The land is located in Allen Parish and borders the City of Oberlin on its north. It is described in part as a 4/7ths undivided interest in a 10-acre tract. This amounts to 5.71 acres, which is the amount of acreage shown on the Guillorys' Assessment Listing generated by the Allen Parish Assessor's Office. The remaining 3/7ths of the 10-acre tract is owned by the heirs of the deceased Mr. Antoine. Mr. Antoine had an old house in the extreme northeast corner of the tract, and he occupied the eastern portion of the 10 acres. Mr. Antoine purchased his land from the Berrys in the 1930's. The Berrys' son, William Berry, age 92 at the time of trial, still owned and resided upon the full 10-acre tract west of the Guillorys. William Berry is the grandfather of Agnes Guillory.
Agnes and Michael Guillory completed the construction of their family dwelling in 1993 which they built near the western border of the tract they purchased in 1991. They believed their interest in the land amounted to a little over half of the 10 acre tract, that their portion would be "coming down the half" of the property, and that their portion would not extend to the Antoine house in the eastern portion of the tract. Hence, Agnes and Michael Guillory were situated on 5.71 acres with Mr. Berry owning the 10 acres to their west and the Antoine heirs owning the 4.29 acres to their east. Moving horizontally from west to east, the total amount of land owned by Mr. Berry, the Guillorys and the Antoine heirs is 20 acres. The 20 acres directly above them was purchased by the plaintiff, James Larry Braxton, on June 1, 1994. Braxton initially harvested and sold hay on his unimproved property. The attached layout (Appendix "A") is a non-scaled adaptation based upon trial testimony and the exhibits of Guillory and Braxton; it represents the court's appreciation of the subject properties.
Running south out of Oberlin and down the western border of the Braxton and the Berry properties is a paved city street called Ninth Street. Running south from Oberlin and down the eastern border of the Braxton property is a gravel road which stops at the Antoine house in the extreme northeast corner of the 10-acre tract belonging to Antoine's heirs and the Guillorys. When the Guillorys built their house they could not get to the gravel road at the eastern corner of Antoine because there is a field in between *117 the Guillory and the Antoine houses. The Guillorys could, however, get to Ninth Street to their west, because there was an old road leading from Ninth Street across the edge of Mr. Berry's property, then along his northern boundary, and along Braxton's southern boundary. The road was the first Oberlin road and at one time extended eastward to Mr. Antoine's house, before its eastern portion was plowed under and turned into a field. The road was first used around the turn of the century by Mr. Berry's parents, surrounding landowners, and the entire town of Oberlin to access houses, saw mills, and a turpentine plant. William Berry and other townspeople drove Model-T's on the road in the 1920's. As stated, Antoine purchased some of the Berry property in the 1930's, built a house in the extreme northeast corner, and drove over the road to his house in his truck.
In the 1940's the landowners signed up for electricity, and Beauregard Electric used the road to put in and maintain power lines and began bush-hogging the road. Agnes Guillory and her brother, Nathan Berry, used the road to go crawfishing and hunting as children. The road continued to be used by sportsmen who drove trucks over it to hunt on the surrounding land. After purchasing his 20 acres in 1994, Braxton himself began using the road, which is partially inside the southern border of his property, to harvest hay on his property. Bailers and purchasers of his hay also used the road. The road has been used by the public for around 100 years. When the Guillorys bought their acreage they began improving the road for better access to their property and the house they were building. Up until that time, the road was still being bush-hogged by Beauregard Electric. In 1992, 1993 and 1994, the Allen Parish Police Jury worked on the road, cleaning out the ditches alongside it, grading it, and putting fill and gravel upon it. Also in 1992 or 1993, the City of Oberlin laid and maintained gas and water lines down the center of the road to the Guillory house, putting fill dirt over the lines on approximately three occasions, the last of which was in 1997 shortly before trial. At some point, the City of Oberlin voted the road into its municipality, named it "City Line Road," and placed a sign bearing that name at the corner of Mr. Berry's property.
Braxton now claims that he wants to subdivide his 20 acres into 34 lots and sell the lots for housing. He complains, however, that the road encroaches on his property and reduces the size of the lots. In 1995, Braxton attempted to fence off the road and informed the Guillorys that they would have to move their gas and water lines and build another road. In 1996, Braxton sued the Guillorys for trespass and sought an injunction to prevent them from using the road. From a judgment denying his injunction and mental anguish claims, but granting him $300.00 in damages, and granting the Guillorys a servitude and right of passage over the road, Braxton appeals.

III.

LAW AND DISCUSSION

Standard of Review
An appellate court may not set aside a trial court's or jury's finding of fact in the absence of "manifest error"or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La. 1989).
In order to reverse under the manifest error rule:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) The appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993).

Assignments of Error
The defendants, Mr. and Mrs. Guillory, do not assign errors except in the alternative should the judgment of the trial court be reversed. Because we affirm the district court's judgment granting a servitude to the defendants, we need not address the defendants' assertions in the alternative.
James Larry Braxton contends that:

*118 1. The District Court incorrectly viewed the evidence of ownership and concluded that the Defendant-Appellee had full ownership of the West 382.2 feet of the Northeast Quarter of the Southwest Quarter of the Northwest Quarter of Section 23, Township 8[sic][1] South, Range 4 West, La.Mer. and a 4/7th's interest of the remainder of the 10 acre tract;
2. The District Court ignored the existence of a hard-surfaced public road and concluded that Defendant-Appellee was the owner of an estate with no access to a public road; and
3. Due to the District Court's error in finding that Defendant-Appellee had an "enclosed estate," it incorrectly denied Plaintiff-Appellant's prayer for an injunction enjoining Defendant-Appellee's use of his property and for damages.
Mr. Braxton first contends that the district court incorrectly concluded that the Guillorys had full ownership of the tract upon which they constructed their house and incorrectly concluded that they owned a 4/7th's interest in the remaining acreage in the 10-acre tract. We find that the evidence in the record provides a reasonable factual basis for a finding of the Guillorys' ownership of the western portion of the 10 acres sufficient to support the trial court's grant of a servitude. However, the trial court incorrectly found that the Guillorys also owned a 4/7ths interest in the eastern portion of the 10 acres. Notwithstanding, the error was harmless. Moreover, our finding that the Guillorys do not own a 4/7ths interest in the eastern portion of the tract reinforces their right of passage to the west, as more fully set forth below.

"Enclosed Estate"
All three of Mr. Braxton's assignments of error revolve around whether the Guillorys' property constitutes an enclosed estate so as to entitle them to a servitude of passage over the Braxton property under La.Civ.Code art. 689. We find no manifest error in the court's judgment and its award of the servitude to the Guillorys. Article 689 of the Louisiana Civil Code provides as follows:
The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion.
The trial court correctly found that the Guillorys had no access to a paved public road running alongside the western boundary of their westward neighbor (Berry), other than the road over Braxton's property. The trial court also correctly concluded that the Guillorys had no access to a public gravel road running to the northeast boundary of the house of their eastward neighbor (Antoine). Mr. Braxton, however, asserts that the Guillory land and the Antoine land on the east are one undivided tract, and that the Guillorys' ownership interest in the Antoine land gives the Guillorys access to the road that runs to the Antoine house. Braxton bases this assertion on the fact that the Guillorys presented no deed showing a legal partition which separates the Guillory land from the Antoine land. We find, however, that the evidence in the record supports an informal division of property which renders the Guillory property enclosed, thereby denying the Guillorys access to the road that runs to the Antoine house on the east.
More specifically, the record contains a copy of the 1991 "Cash Sale" wherein Michael Guillory's sister and brother-in-law conveyed to Michael and Agnes Guillory
An undivided 4/7ths interest in and to a tract of land described as the Northeast Quarter of the Southwest Quarter of the Northwest Quarter, Section 23, Township 5 South, Range 4 West; less and except 3.71 acres and containing 2.00 acres more or less, and being situated in the Town of Oberlin, Parish of Allen, State of Louisiana, together with all buildings and improvements located thereon if any.
The United States government surveys land such that a Range consists of a row of Townships with each Township consisting of 36 square miles. Each square mile in a *119 Township constitutes a "Section" which contains 640 acres. The Section is then quartered and each Quarter is quartered and divided into Quarters such that the above description identifies a 10-acre tract of land, of which the Guillorys own 4/7ths, or 5.71 acres. The Guillorys' tax Assessment Listing also shows an undivided 4/7th interest in the described 10-acre tract and their ownership of 5.71 acres. This is consistent with Mr. Guillory's testimony that he owned a little over half of the 10-acre tract. As stated, based upon tax assessment records, Michael and Agnes Guillory own 4/7ths or 5.71 acres, and it is undisputed that the Antoine heirs own the remaining 3/7ths or 4.29 acres of the 10-acre tract.
Mr. Guillory testified that arrangements were made to physically divide the property with the Antoines. Mr. Guillory hired an attorney and had a professional survey prepared. The survey which was entered into the record described the Guillorys' parcel as
Beginning at the Southwest Corner of the NE¼ SW¼ NW¼, Section 23, T5SR4W: Thence North along the West line of NE¼ SW¼ NW¼ 668.2 feet to the Northwest Corner of NE¼ SW¼ NW¼: Thence East along the North line of NE¼ SW¼ NW¼ 382.3 feet: Thence South parallel with the West line 668.0 feet: Thence West along the South line of NE¼ SW¼ NW¼ 382.2 Feet to the point of beginning.
The above description identifies property of approximately 5.8 acres, approximately one tenth of an acre more than the 4/7ths shown on the Assessment and the Cash Deed. However, we are not fixing boundary lines, and we leave any such discrepancies to be resolved between the Guillorys and the Antoines. The only dispute being herein resolved is the dispute over the road between Braxton and the Guillorys. In any event, the record reflects an intent to divide the property and an allocation to the Guillorys of a tract of land of over five acres. This acreage is shown on the survey to occupy the western portion of the 10-acre tract. Since trial testimony indicates that the deceased Mr. Antoine's house is in the northeast portion of the 10 acre9 tract, it is logical that his heirs would divide the property such that their portion would include the house they inherited. Likewise, there is no evidence that the Antoines objected to the Guillorys constructing their house near the western border of the 10-acre tract.
At trial, the plaintiff alluded to a dispute between the Antoine heirs and the Guillorys as to the exact division of the property, but Braxton presented no testimony by the Antoine heirs, and there was no explanation regarding the nature of the alleged dispute. We conclude that any dispute regarding the division of property would likely have involved the eastern boundary line of the Guillorys' land and could have possibly been over the 1/10 th acre discrepancy between the cash deed and the survey. However, for the purpose of determining whether the Guillorys' estate is enclosed, we need not determine exact boundary lines. It is sufficient that there was an intent to separate the portions of land owned by the co-owners.
We find that there was an intent between the parties to partition the property such that the Antoines owned the eastern portion while the Guillorys owned the western portion of the ten acres. This is evident given the fact that the Guillorys and the Antoines obtained their respective 4/7ths and 3/7ths interests from different sources and each family has a house on opposite sides of the property. Contrary to Braxton's assertion, Michael Guillory testified that he did partition the property with the Antoine heirs, and he believed that the professional survey he obtained was the instrument by which the property was divided, notwithstanding his failure to produce a separate deed specifically showing full ownership of the 5.71 acres. In the absence of a document showing a written partition, our jurisprudence has in the past recognized "informal" partitions, which we find applicable herein.
More specifically, in Estate of Fisher v. Otwell, 485 So.2d 671 (La.App. 3 Cir.), writ denied, 488 So.2d 1028 (La.1986), where the evidence did not support full ownership due to an informal partition, this court analogized the "Chaumont Doctrine" pursuant to Chaumont Oil Co. v. Le Blanc, 185 La. 640, 170 So. 21 (La.1936). In Chaumont, where the *120 plaintiff's petitory action was dismissed, the court found considerable testimony to show that owners of the north and south halves of a tract of land had "established the dividing line of their respective properties, on the ground, by a turn row, and other indicia of said boundary line"... and each "knew the extent of his or her interest therein...." Chaumont at 23.
Subsequently in Faulk v. Faulk, 180 So. 887 (La.App. 1 Cir.1938), the first circuit reversed the plaintiff's judgment of partition, finding that ancestors in title had informally partitioned their land by running a dividing line through their property, and had "blazed and marked several trees so as to designate this line." They had cut timber only on their respective halves, and "neither encroached on the lands of the other after they had established this line." Faulk at 888. The Faulk court discussed prior cases on the issue of verbal partition and cited Fox v. Succession of Broussard, 161 La. 949, 109 So. 773 (La.1926) for the proposition that an agreement of partition can be ratified by conduct and silence. Faulk at 889.
In Shell Oil Co. v. Hebert, 373 So.2d 1339 (La.App. 1 Cir.), writ denied, 376 So.2d 318 (La.1979), the first circuit held that there was an informal partition of property where evidence reflected an intention on the part of the parties that the land at issue comprised two separate tracts, upper and lower, and that subsequent actions established an upper and lower division of the property. While we questioned this case in our Otwell opinion, we recognized the Chaumont Doctrine, and current research indicates that both of the Louisiana Supreme Court decisions on informal partition in Chaumont and Fox are still good law.
In the present case, the Guillorys have constructed a house near the western boundary of the western portion of the 10-acre tract of which they own 5.71 acres. The Antoine heirs inherited Lamar Antoine's portion of the 10-acre tract which contained a house in the northeast part of the remaining acreage. There is no evidence that the Antoine heirs contested the building of the Guillory house. The evidence further indicates an agreement to survey and divide the land into western and eastern portions. Hence, we find an informal partition to the extent that the western 5.71 acres is owned by the Guillorys and the eastern portion containing 4.29 acres and Mr. Antoine's dwelling belongs to the Antoine heirs.
The significance of the partition is that it places Guillory's estate between Mr. Berry on his west and the Antoine heirs on his east, thereby enclosing Guillory and leaving him without access to the paved public road on the western border of Mr. Berry or the gravel road at the northeast corner of the Antoine heirs. Hence, contrary to Braxton's assertions, but for the road along Braxton's southern boundary, the Guillorys' 5.71 acres is enclosed. Accordingly, they are entitled to a servitude of passage under La.Civ.Code art. 689.
As previously stated, we do not find, as the trial court did, that the Guillorys own 4/7ths of the remaining acreage in addition to the tract described in the survey. The survey describes a tract of approximately 5.8 acres standing alone, while the other instruments, the Cash Sale and the Assessment Listing, indicate that the Guillorys own a total of 5.71 acres. Thus, the Guillorys cannot own the surveyed tract plus an interest in the remaining acres. However, we find the trial court's finding to the contrary harmless error, since we still find that the Guillorys are situated on a separate, enclosed estate, entitling them to a right of passage.
Braxton also asserts that the trial court ignored the existence of a hard-surfaced public road and erred when it concluded that the Guillorys were the owners of an estate with no access to a public road. However, the record reflects that the road referenced by the plaintiff is the gravel road which stops at the house of Antoine in the extreme northeast corner of the 10-acre tract. There is no evidence that this road is paved or that the Guillorys have access to it due to Antoine's field and the informal division of the property. In his brief, Braxton attempts to analogize one, one-page case, Fusilier v. Fournerat, 359 So.2d 1060 (La. App. 3 Cir.1978) which found that an accessible public road to the east made it unnecessary to grant a right of passage as the estate *121 at issue was not enclosed. However, we find that the Guillorys did not have access to the gravel road east of Antoine.
More specifically, the trial court's determination that the Guillorys' estate is enclosed entitles them to a right of passage over neighboring property pursuant to La.Civ. Code art. 689, and the court appropriately located the passage along the southern border of Braxton's property over the old road beginning on Mr. Berry's land. Article 692 of the Louisiana Civil Code provides as follows:
The owner of the enclosed estate may not demand the right of passage anywhere he chooses. The passage generally shall be taken along the shortest route from the enclosed estate to the public road at the location least injurious to the intervening lands.
The trial court found that the best route for the Guillorys' right of passage out of their enclosed estate was to the west over the road running along part of the southern border of Braxton's property, because that road was "in use and in good repair, and it provides access to a suitable paved public road." As to the nearest public road to the east of Guillory, which is the gravel road leading only to the northeast corner of Antoine's property, the court stated that there was no roadway or path leading from the Guillorys to that road. The court further stated that the road to Antoines is only an unimproved road which would be difficult to negotiate in inclement weather. Consequently, while the public road east of Antoines might be nearer to the Guillorys' eastern boundary, the public road west of Mr. Berry was more accessible because of the existing road partially on Braxton's property. Moreover, the court stated that the road over Braxton's property "only burdens a small area on the boundary line of the servient estate." We agree.
The trial court cited Bouser v. Morgan, 520 So.2d 937 (La.App. 3 Cir.1987) wherein we stated that we did not interpret La.Civ. Code art. 692 to require the court in every instance, regardless of the circumstances present, to select the "shortest route" from an enclosed estate to a public road. In Bouser, we referenced previous Louisiana Supreme Court cases finding that the mandatory language in the servitude article is modified by the term "generally" as an acknowledgment of certain exceptions. Bouser, 520 So.2d at 940. See Vermilion Parish School Bd. v. Broussard, 263 La. 1104, 270 So.2d 523 (La.1972); and see Rockholt v. Keaty, 256 La. 629, 237 So.2d 663 (La.1970). See also Rieger v. Norwood, 401 So.2d 1272 (La.App. 1 Cir.), writ denied, 409 So.2d 618 (La.1981), where our brothers of the first circuit articulated that "[t]he term (generally) in Article 692 has been held to be an acknowledgment that there are exceptions to the general rule expressed therein, and it is recognized that the nature and location of the servitude are governed by the circumstances of the case." Rieger, 401 So.2d at 1273.
The evidence indicates that the only public road east of Guillory is a gravel road which runs up to but not beyond Antoine's house in the northeast corner of the tract. It appears from the record that the only access to that road is from Antoine's house which belongs to the Antoine heirs. Furthermore, a witness, Mr. Darryl Harmon, stated that in visiting Guillory he could only continue eastward to the wood line, and that then there is a field, and then Mr. Antoine's old house. Therefore, Guillory does not have access to the road in the east as asserted by Braxton. Moreover, while the Guillorys cannot go through the Antoine's house to access the gravel road in the east, Mr. William Berry, Agnes Guillory's grandfather, happily acquiesces in public use of the road to the west which crosses his property where it meets the paved Ninth Street. Accordingly, we find, as the trial court did, that the gravel road to the east of Antoine is not accessible to the Guillorys, and the paved road to the west of Berry, called Ninth Street, is accessible via the road in existence along Braxton's southern border, which is the most appropriate route of passage for the Guillorys.
In fact, even without concluding that Guillory is entitled to a right of passage to the west because his estate is enclosed, the evidence indicates that the Guillorys can rightfully use the road bordering Braxton's property *122 because it has been dedicated by the surrounding landowners.

Public Road
Louisiana has never enacted a comprehensive scheme of dedication to public use. Garrett v. Pioneer Production Corporation, 390 So.2d 851 (La.1980). However, Louisiana courts have recognized four modes of dedication: (1)formal, (2) statutory, (3) implied, and (4) tacit.
A landowner may make a formal dedication of a road by virtue of a written act, such as a deed of conveyance to the police jury of the parish. Frierson v. Police Jury of Caddo Parish, 160 La. 957, 107 So. 709 (La.1926); Thompson v. State, 94-2610 (La. App. 1 Cir. 4/23/96); 688 So.2d 9, aff'd, 97-0293 (La.10/31/97); 701 So.2d 952. However, there is no written evidence in the record in the present case of a formal dedication.
Statutory dedication occurs when a landowner subdivides real estate in substantial compliance with La.R.S. 33:5051, which provides for the subdivision of real estate into squares or lots with named streets for dedication to the public. A statutory dedication may exist even though there is no language in the plat formally dedicating lands to public use. Union Bank v. Baudin, 598 So.2d 689 (La.App. 3 Cir.1992). However, this is not a Section 5051 dedication.
Implied dedication is a common law doctrine recognized by the courts of this state. Collins v. Taylor, 518 So.2d 602 (La. App. 1 Cir.1987); Grantadams v. Lacombe, 96-674 (La.App. 3 Cir.1996); 688 So.2d 1130. It consists of "an informal offer to the public to use the road, and acceptance by the public" in the form of actual use of the road, as discussed more fully below. Thompson, 688 So.2d at 29.
Tacit dedication of a strip of land for use as a public road occurs when the requirements of La.R.S. 48:491 are met. Grantadams, 688 So.2d 1130; Sylvester v. St. Landry Parish Police Jury, 461 So.2d 534 (La. App. 3 Cir.1984).
Louisiana Revised Statutes 48:491(B)(1)(a) provides as follows:
B.(1)(a) All roads and streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority within its parish, or by the authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property.
In his brief to this court, Braxton asserts that the road over his property was not maintained by the parish for a period of three years and that La.R.S. 48:491 does not apply to designate the road as a public road. We disagree.
The courts interpreting La. R.S.48:491 hold that "tacit" dedication under the statute does not require the landowner's intent to create a public road but only requires that he accept the benefits of public maintenance for the required period of time without making his opposition known to the public body. Jefferson Davis Parish School Board v. Fontenot, 505 So.2d 955 (La.App. 3 Cir.), writ denied, 511 So.2d 1154 (La.1987). Moreover, "protests not made directly to the governing body or made after the road has been maintained by the governing body for three years do not prevent a tacit dedication under the statute." Jefferson Parish School Bd., 505 So.2d at 959.
In the present case, the record reflects that the Allen Parish Police Jury worked on the road in the summer of 1992, in the spring and summer of 1993 and in 1994. More specifically, parish employee Mike Duplechain cleaned out the ditches alongside the road in June or July of 1992. The dirt from the ditches was put on top of the road. Parish employee Shelby Robinson graded the road around April of 1993 and there is testimony that Duplechain placed gravel on the road around June of 1993. Houston Slate testified that he worked on the road for the parish four or five times grading it and picking up sticks. He graded the road in 1994, and the parish again put fill dirt on the road.
*123 The record also indicates that the City of Oberlin laid gas and water lines down the middle of the road and put fill dirt over it during the construction of the Guillory house which was completed in 1993. The City came back and put new fill after a heavy rain, and subsequently put fill dirt on the road a month or two before the trial of this matter in April of 1997. A city employee testified at trial that the city voted the road into the municipality, named the road "City Line Road" and placed a green sign with white letters bearing that name at the beginning of the road where it crosses Mr. Berry's property and intersects with Ninth Street. There is no evidence in the record that Braxton or the previous owner has ever complained to the parish or the City of Oberlin, even though Braxton attempted to fence off the road in 1995 and filed suit in 1996.
In fact, Braxton used the already improved road which begins on Mr. Berry's property, to get to his hay fields after purchasing the property in 1994. He harvested the hay for his economic benefit, and haybailers and purchasers of his hay used the road. Braxton initially told the Guillorys that he needed the road as much as they did and that there would be no conflict regarding the road. Subsequently, Braxton decided to subdivide his twenty acres and sell the lots, and only then did he complain to the Guillorys by correspondence in November of 1995 informing them that he would block their access to the road. However, there is no evidence that Braxton ever complained to the public entities regarding maintenance of the road, which was in fact already improved and in use when Braxton purchased his property in June 1994. He waited a year and a half before complaining to Guillory in November 1995 and waited another year before filing suit in 1996.
In Fontenot v. Veillon, 72 So.2d 587 (La. App. 1 Cir.), writ denied, (La.1954), roads worked on by the Police Jury for over three years were held public roads even though the Police Jury did not have a written right-ofway and it never adopted a resolution declaring the roads public, and in spite of the defendant's having done some work on the roads himself. In Elum v. Kling, 98 So.2d 700 (La.App. 1 Cir.1957), writ denied, (La. 1958), a road worked off and on by the parish without objection from anyone for well over three years was held a public road in spite of defendant's attempts to show that the Police Jury had not worked the road for three consecutive years.
Latour v. Dupuis, 164 So.2d 620 (La.App. 3 Cir.1964) also supports our position. There, we found a public road where the parish did not outlay large amounts of labor or materials but contributed the major portion of the maintenance on the road for a period in excess of three years. Again, in Foshee v. Longino, 236 So.2d 870 (La.App. 3 Cir.1970), we found that evidence showing some work done by the Police Jury was sufficient to render a road through the woods a public one.
More recently in Jefferson Davis Parish School Bd., 505 So.2d 955, this court affirmed a ruling of tacit dedication of a school bus turnaround which was worked and material was added when needed over a 12-year period, even though the testimony was in dispute as to whether the police jury had maintained the road for three years during that period.
In Sylvester, 461 So.2d 534, this court found evidence establishing tacit dedication of a public road even though the Police Jury adopted a resolution of abandonment and the property owner had objected to public maintenance back in the 1960's. In that case, Sylvester bought a large tract of land in 1953 and asked St. Amand, who owned 453 acres, for a right-of-way over his property to Louisiana Highway 29. St. Amand gave him oral permission to install a road and maintain it. The right-of-way requested by Sylvester was an old roadway which had not been used for many years. Sylvester cleared the old roadway, built a bridge and added gravel to the surface. Sylvester requested help from the police jury in the late 1950's. In the early 1970's, the roadway was designated by engineers as Parish Road Number 5-245. Assistance by the Police Jury continued in the form of grading the road three to four times a year, and some gravel was placed upon the road. Families living on the road and persons who participated in commercial crawfishing *124 and who hunted on the farm continued to use the road. Id.
In 1977 St. Amand's attorney notified the Police Jury that he wanted their maintenance of the road stopped because he did not want the road to become a public road. This was noted as the first formal objection by St. Amand, even though there was a verbal objection to one police juror in the 1960's. Sylvester, 461 So.2d 534. In 1979, St. Amand requested an abandonment resolution from the Police Jury and that resolution was subsequently adopted. Such a resolution is authorized by La.R.S. 48:701 when roads are no longer needed for a public purpose. We found, however, that the resolution was arbitrary and capricious where the use of the land in that case was continuing. We further found that the requisites of La.R.S. 48:491 were met for tacit dedication of that roadway as a public road.
While the Sylvester case indicates a longer and heavier involvement by the Police Jury than is indicated in this case, we find that two public entities sufficiently improved a preexisting road to render it a public road for purposes of "tacit" dedication under La. R.S. 48:491; and the City of Oberlin named and signed the road "City Line Road." Moreover, there is evidence in the record that the road in this case was impliedly and expressly dedicated to surrounding landowners and to the public at large long before Braxton purchased his land in 1994 and long before the Guillorys purchased their land in 1991.
More specifically, Mr. William Berry, owner of the ten acres east of the Guillorys, is the grandfather of Agnes Guillory and was 92 years old at the time of trial. Mr. Berry testified that the road at issue, which begins on his property, was the first Oberlin road and had been in that location for over 100 years. Mr. Berry stated that the road was used by the public for access to their houses, to saw mills, and to a turpentine plant operating at that time. The essential feature of "implied" dedication is the absence of requisite formalities. Thompson, 688 So.2d at 29. However, there must be a plain intention to give and one equally plain to accept. "Thus, the two indispensable elements of implied dedication are: proof of a positive intent to dedicate ... and proof of acceptance by the public. The offer may be implied from facts or acts by the owner ... and acceptance may be inferred from actual use of the property by the public." Id. An implied dedication establishes a servitude of public use. Collins, 518 So.2d 602. In the present case, Mr. Berry testified that the old road was twelve feet wide and that he and other landowners had left that twelve feet as a road for everyone to travel.
Mr. Berry specifically stated that the road had always been open to everyone, and all were welcome to use it. He stated that he and others drove Model T's on the road in the 1920's. Mr. Berry stated that old Mr. Antoine bought the northeast portion of the 10 acres to his east from Mr. Berry's parents in the 1930's and that Mr. Antoine used to drive a truck down the road to his house. Mr. Berry stated that one neighbor hauled lime to his property over the road and that the road was used to go from house to house, to the saw mills, and to the turpentine plant. People also drove trucks over the road to hunt and fish all the way up until current times.
Mr. Berry stated that Beauregard Electric used the road to put up and maintain power lines in the 1940's. Beauregard Electric was still bush-hogging and using the road all the way up until the events giving rise to this lawsuit. Mr. Berry stated that Mr. Antoine subsequently allowed the eastermost portion of the road leading to his house to be plowed up, and he began accessing his property from the extreme northeast corner via a new gravel road leading down to him from the north. Therefore, the road beginning on Mr. Berry's property in the west and running partially inside the southern border of Braxton property ended at the property purchased by Michael Guillory, effectively closing him off to the east. When Guillory purchased the property from his sister in 1991, his only access was via the old road beginning west of him on Mr. Berry's property, now known as City Line Road.
Agnes Guillory testified that she had used the road in her childhood to go fishing, and that it had ditches alongside it. Mrs. Guillory's brother, Nathan Berry, testified that he *125 used the road to go crawfishing and hunting when he was younger. Since 1992, he had also seen parish and city employees work on the road, and had seen Braxton using the road. Nathan Berry named numerous individuals, including people bailing hay, whom he had personally seen using the road, and he stated that he had seen the telephone company run telephone lines which he thought were under the road. He further stated that there were once culverts in the road before those placed there by Guillory.
During trial, the elder Mr. William Berry stated that he and previous landowners had left the road for public use, and that the road had over the years continued to be in use by the public. The court obtained specific information from Mr. Berry that there had never been a 10-year period that the road had gone unused by a vehicle. Mr. Berry stated that "That's the regular public road for the people. We all left that. That wasn't no lane in no field or nothing." Mr. Berry testified that when Braxton had the land surveyed and attempted to claim part of the road, Mr. Berry told Braxton, "Well, it don't belong to nobody because we all signed and left it for people to travel, you see."
Braxton himself stated that in 1994 when Carl Aguillard sold him the 20 acres north of Berry, Guillory and Antoine, the road was already there with gravel on it and ditches alongside it. Yet, there is no evidence that Aguillard ever complained to any of the public entities who had been working on the road since 1992, and no evidence that he complained to Beauregard Electric who had continued to bush-hog the road after putting in power lines in the 1940's, or to the telephone company who ran lines there.
In viewing the testimony in the record as a whole, we find sufficient evidence that Mr. William Berry and earlier property owners of the area around Oberlin impliedly and expressly granted a servitude over the roadway to surrounding landowners and the public at large. This servitude existed before Braxton purchased his property and was passed along to him as a charge on the servient estate. Louisiana Civil Code Article 650 provides that "[a] predial servitude is inseparable from the dominant estate and passes with it. The right of using the servitude cannot be alienated or encumbered separately from the dominant estate. The predial servitude continues as a charge on the servient estate when ownership changes."
Moreover, Braxton's own witness, an employee of the City of Oberlin, Wayne Montou, stated that the city voted on the road, named it City Line Road, and placed a sign at the corner of Mr. Berry's property where the road intersects with Ninth Street. Mr. Braxton has not sued the City of Oberlin. We find that the trial court reasonably concluded that the appropriate right of passage for the Guillorys was over the existing road which was in use and in good repair. While the trial court did not specifically rule that the road was a public servitude, Braxton in his brief to this court asserted that it was not. We find, however, that the road was impliedly dedicated in the earlier part of the century, continued to be used over the years, and was tacitly dedicated when Allen Parish and the City of Oberlin were allowed to work on the road from 1992 to 1997.

Damages
Braxton asserted in his third assignment of error that because the trial court erred in finding an enclosed estate, it incorrectly denied Braxton's prayer for an injunction and for damages. Again, we disagree. As stated, the Guillory estate is enclosed due to an informal partition, except for the road partially over Braxton's property. Moreover, the trial court did award damages of $300.00 to Braxton. The court found that Braxton paid $1,300.00 per acre for the undeveloped 20 acres, and found that the servitude of passage encompassed approximately 1/10th of an acre. One tenth of $1,300.00 is $130.00. However, the court more than doubled that amount and awarded $300.00 to Braxton. We, therefore, find this amount to be more than adequate.
The trial court properly denied Braxton's request for mental anguish damages. A damage award for mental anguish allegedly resulting from property damage is permissible only when property is damaged *126 by an intentional or illegal act, by an act for which the tortfeasor will be strictly or absolutely liable, by acts constituting nuisance, or when the owner is present or nearby and suffers psychic trauma as a result. Mere frustration without proof of psychic trauma similar to physical injury will not lead to recovery. Moreover, the property must have been damaged. Freyou v. Iberia Parish School Bd., 94-1371 (La.App. 3 Cir. 5/3/95); 657 So.2d 161. There is no evidence in the record that the above elements have been met. Braxton simply purchased an unimproved 20 acres of land with an improved road already on part of the southern border, which he used to market his hay for his economic benefit. In fact, Braxton has not even alleged a headache, but has only asserted a conclusory statement that he is entitled to mental anguish damages.

IV.

CONCLUSION
Based upon the foregoing reasons, we affirm the trial court's denial of Braxton's claims for mental anguish damages and an injunction against the Guillorys. Likewise, we affirm the trial court's judgment granting the Guillorys a right of passage over Braxton's property along the existing road at Braxton's southern boundary, and its award to Braxton of $300.00 for the damage occasioned by the servitude.
AFFIRMED.
YELVERTON, J., concurs in part, dissents in part and assigns reasons.

*127 APPENDIX A

*128 YELVERTON, J., concurring in part and dissenting in part.
I concur in part. City Line Road is clearly a public road. It goes right up to the northwest corner of the Guillory estate. Therefore, the Guillorys have a right to use City Line Road and are not trespassing on Braxton's property when they do so. Braxton's suit based on trespassand this is all it waswas properly dismissed by the trial court and with the judgment of dismissal I concur.
I cannot agree, however, with the award of damages of $300, or any amount, to Braxton. This award was based on the perceived need to give the Guillorys' estate the right of passage over City Line Road due to an enclosed estate. The Guillory estate is not an enclosed estate, and it does not need a servitude of passage to use City Line Road, a public road. The Guillorys answered the appeal and asked for alternative relief in the event the trial court erred in any way. The alternative relief included a prayer that the judgment in the main demand be rendered completely in favor of the Guillorys, dismissing Braxton's demands at his costs. That is what we should do, and from our failure to do that, I dissent.
NOTES
[1] The correct reference is Township 5.